(142 App. Div. 94.)

### CHAMPLAIN STONE & SAND CO. v. STATE.

(Supreme Court, Appellate Division, Third Department.   January 4, 1911.)

1. EMINENT DOMAIN (§ 155*)—TAKING OF LAND—CLAIM FOR DAMAGES.

A claim for land taken by the state for a public improvement belongs to the owner of the land and not to his lessee for a term of years.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 421–424;  Dec. Dig. § 155.*]

2. EMINENT DOMAIN (§ 2*)—IMPROVEMENT OF PUBLIC STREAMS — COMPENSATION.

The state may improve its public streams, and damages resulting therefrom to riparian proprietors are not recoverable.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3;  Dec. Dig. § 2.*]

3. EMINENT DOMAIN (§ 2*)—IMPROVEMENT OF PUBLIC STREAMS — COMPENSATION.

The state improving a public stream over which a lessee of a quarry maintained and operated a bridge forming a part of a road from the quarry to a railroad, so constructed that car loads of stone started at the quarry would run by their own weight to the railroad, is not liable for the damages sustained to the lessee or lessor resulting from the destruction of the gravity road by the widening of the waterway, so that it cannot be economically bridged.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3;  Dec. Dig. § 2.*]

4. EMINENT DOMAIN (§ 2*)—"IMPROVEMENT" OF NAVIGABLE WATERS—COMPENSATION.

The construction by the state of a barge canal which follows the general line of a stream constituting a public highway is an improvement of the stream, within the rule that a riparian proprietor cannot recover damages resulting from the improvement of a public stream, though the canal deviates from the stream so far as is necessary to straighten it.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3;  Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 4, pp. 3452–3460;  vol. 8, pp. 7682, 7683.]

5. EMINENT DOMAIN (§ 2*)—IMPROVEMENT OF NAVIGABLE WATERS—COMPENSATION.

The construction of a barge canal which follows the general line of a stream constituting a public highway is an improvement of a navigable stream as against the objection that the canal is an artificial waterway under control of the state, in which adjoining landowners have not the rights they possess in a navigable stream, where no damages are claimed for the deprivation of rights to navigation, for the canal is a public waterway, and the fact that the use thereof is under special regulation does not make it any the less such a public improvement as is within the authority of the state to make.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 3;  Dec. Dig. § 2.*]

6. NAVIGABLE WATERS (§ 20*)—BRIDGES.

Where the state has only a right of way in a stream constituting a public highway, one may construct a bridge over it, provided it does not impair the usefulness of the stream as a public highway.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99;  Dec. Dig. § 20.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. EMINENT DOMAIN (§ 82*)—DAMAGES—RECOVERY.

Where the state, having only a right of way in a stream, improved it by constructing a barge canal following its line, one who had in good faith constructed a bridge over the stream forming a part of a road used in his business could recover for the destruction of the bridge, though he could not recover if he in bad faith to enlarge his claims constructed the bridge.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 215–219; Dec. Dig. § 82.*]

8. EMINENT DOMAIN (§§ 79, 80*)—DAMAGES—RECOVERY.

That a lessee constructing a bridge over a stream, in which the state had a right of way, knew that the stream was the contemplated line of a new canal, was not alone sufficient to defeat his claim for damages resulting from the destruction of the bridge by the construction of the canal on the ground that the structure was placed on the premises in bad faith to enhance the damages.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. §§ 79, 80.*]

9. NAVIGABLE WATERS (§ 20*)—BRIDGES—LEGISLATIVE PERMISSION.

Where the state owns the bed of a stream constituting a public highway, an adjoining proprietor may not, without legislative permission, erect a bridge over it, and the bridging of such a stream without legislative permission is a trespass.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. § 20.*]

10. NAVIGABLE WATERS (§ 8*)—DAMAGES.

Where the state improved a public stream, the bed of which it owned, and thereby destroyed a bridge over it erected without legislative permission, the state was not liable either for the bridge destroyed, or for the destruction of a roadway constituting the approaches to the bridge built to cross the stream.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 21; Dec. Dig. § 8.*]

11. NAVIGABLE WATERS (§ 37*)—GRANTS—RESERVATIONS.

An ancient patent of land from the sovereign excepting a designated creek "which is reserved as a common highway for the benefit of the public" does not convey the bed of the creek, but the title thereto remains in the state.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–227; Dec. Dig. § 37.*]

12. PUBLIC LANDS (§ 114*)—GRANTS—CONSTRUCTION.

The terms of a grant of land from the sovereign are taken most strongly against the grantee because public interest is involved.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314–322; Dec. Dig. § 114.*]

Kellogg, J., dissenting in part.

Appeal from Court of Claims.

Claim by the Champlain Stone & Sand Company against the State. From a judgment of the Court of Claims (66 Misc. Rep. 434, 123 N. Y. Supp. 546) in favor of claimant for insufficient damages, it appeals. Affirmed.

Prior to March, 1906, one Charles S. Fenton was the owner of a quarry situated near Ft. Ann, Washington county, and of flat lands adjoining said quarry, and extending therefrom to the lands of the Delaware & Hudson Railroad Company. In that month he made a lease of the said quarry to James E. Flood and James D. Sherrill for the term of 10 years. By the terms of that lease the lessee agreed to pay the lessor $100 a year in advance, on April 14th in each year during the term of the lease, for the right

---

of way for railroad tracks and land occupied by crushers, bins, etc., and lands used for quarry purposes, and in addition 4 cents per cubic yard for all stones taken from said quarry and shipped away. On March 24th, 10 days after the making of said lease, the lessees assigned their interests therein to the claimant. These lessees took in payment therefor $30,000 in the stock of the claimant company, and were at the time of the trial officers of said company and largely interested therein. On August 27, 1906, Fenton extended the term of said lease from 10 to 20 years. Thereafter and in 1906 the claimant expended large amounts of money upon stone crushers and in building a gravity track from the stone quarry across the flat land of the said Fenton to the Delaware & Hudson Railroad. Between the quarry property and this railroad runs Wood creek, which was crossed by this railroad by means of a bridge. This track was so built that a car load of stone started at the quarry would run by its own weight to the land of the railroad company, from which it was taken by the engines of the railroad.

By chapter 147 of the Laws of 1903 the state was authorized to appropriate lands for the Champlain branch of the barge canal. In 1904 a course was surveyed through the flat lands of the said Fenton between the quarry and the railroad and along the general line of Wood creek. Wooden stakes were put into the ground upon the line of this survey, upon which were marked the letters "C. L.," standing for "Center Line." The old Champlain canal was upon the west side of the railroad; whereas, the quarry was upon the east side of the railroad. Upon December 27, 1906, a map of the lands appropriated was filed in the office of the superintendent of public works, which indicated the lands appropriated to have been the same lands marked by stakes in the survey of 1904.

After the filing of the map making the appropriation of these lands for the canal the claimant duly filed this claim for damages caused by the said appropriation, and after a trial before the Court of Claims was allowed the sum of $1,000 as its damage. From the judgment entered upon this decision of the Court of Claims, this appeal has been taken.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

James McPhillips (L. B. McKelvey, of counsel), for appellant.
Edward R. O'Malley, Atty. Gen. (Wilber W. Chambers, of counsel), for the State.

SMITH, P. J. My conclusions in this case, briefly stated, are as follows:

First. The appropriation for which compensation is asked was not of the stone quarry but of the right of way to the Delaware & Hudson Railroad involving the destruction of certain structures thereupon. The right of way from the quarry to the Delaware & Hudson Railroad crosses Wood creek about 15 feet in width by a bridge, which in no way has interfered with the navigation of Wood creek; in fact, navigation upon Wood creek has been long abandoned. The gravity road upon this right of way is deemed of great value, without which the stone could not be marketed at any substantial profit. The barge canal is to be 75 feet in width. Even if permitted by the state to bridge the canal, the cost would be prohibitive. So that if the state is liable for this injury to claimant the damage is substantial.

But Wood creek is a public highway. By the "Artillery Patent," through which plaintiff claims, these lands were conveyed "excepting the said Wood creek, which is reserved as a common highway for the benefit of the public."

Assume first for the argument that the state has only an easement for a public highway in Wood creek.

There can be no claim for land taken, as that claim belongs to the owner or lessor. The major item of damage claimed is for making impracticable this gravity road by widening of the public waterway, so that it cannot be economically bridged. For this I am clear the claimant has no remedy. That the state has the right to improve its highways and deepen or widen its public streams is within recognized authority. In Lewis on Eminent Domain, §§ 69, 71, it is held that the rights of riparian proprietors upon navigable streams was subject to the paramount right of the public to use and improve the stream as such highway, and subject also to the right of the public to improve the stream for navigation. In Mills on Eminent Domain, § 80, it is held that navigable rivers may be altered, deepened, and their channels changed, and damages resulting from such an improvement are not properly the subject of compensation. The public have a right to make use of the river as a natural highway, and if the riparian owner is injured by such use he is without remedy. In Nichols on Eminent Domain, § 166, it is held that the public right of navigation is paramount upon a private navigable stream, and is always subject to the servitude of navigation by the public and to the right of the government to construct works therein in aid of navigation. If this stream had at all times been so shallow that the claimant's teams could have forded it with loads, the state clearly could have improved and deepened it without compensating the claimant for the extra expense necessitated for bridging or ferrying. So, also, the state may improve and widen the stream without compensation for the extra expense caused the claimant in crossing. No adjoining owner has a vested right in a public stream as he finds it. His rights are always subject to the right of the state to improve the stream for navigation.

It is insisted by the claimant, however, that this is not an improvement of Wood creek, but a construction of a new artificial water highway, the control of which is entirely reserved to the state. That this barge canal is a public highway is unquestioned. In its construction through the territory in question, it follows the general line of Wood creek, which has for many years been a public highway. It cannot matter that in order to straighten this highway the bed of the canal does not always follow the bed of Wood creek. If it had followed the exact windings of Wood creek, there could then have been no question that it was an adoption and improvement of a highway already existing. Its right to the construction and improvement of a water highway along the general line of the creek, however, is not in any way impaired by such deviations as are necessary to straighten and improve the highway.

Again: Claimant insists that this is not the improvement of a navigable stream, because it is an artificial waterway under control of the state, in which the adjoining landowners have not the rights they possess in a navigable stream. But no damage is claimed for the depriving of claimant of any rights to navigation. The barge canal is a public waterway. The fact that the use thereof is under special

regulation does not alter the nature of the improvement or make it any the less such a public improvement as is within the authority of the state to make.

As to the claimed injury by making impracticable the gravity road, the good or bad faith of the claimant is probably not material. This gravity road is a valuable adjunct to the property itself, and it cannot matter to the state whether payment therefor, if liable, be made to the lessor or lessee.

Second. Again, upon the assumption that the state only has a right of way in Wood creek, the claimant had the clear right to construct its right of way and bridge it, provided it did not impair its usefulness as a public highway. Chenango Bridge Co. v. Paige, 83 N. Y. 185, 38 Am. Rep. 407. Whether or not the bridge has yet been taken down, the plan of the state involves its destruction and the destruction of part of the roadbed, for which the claimant is entitled to damages if the structures were placed thereon in good faith. If, however, the structures were placed upon the premises in bad faith for the purpose of enlarging its own claims and enhancing the state's damages, claimant merits no compensation: But there is no finding of bad faith. The lessee undoubtedly knew where was the contemplated line of the new canal; but that alone is not sufficient to defeat its claims for damages. Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Matter of Mayor, 24 App. Div. 7–10, 49 N. Y. Supp. 119. Bad faith must be found as a fact.

Upon the assumption, therefore, that the state has only a right of way in Wood creek, the judgment would have to be reversed, and a new trial ordered, that the court may assess the claimant's damage for the destruction of the structures constituting the bridge and its approaches.

Third. In this discussion so far, I have assumed for the argument that the state only has an easement in Wood creek for the use of the public. If the state owns the bed of the stream, a different question is presented. In that case no adjoining proprietor has the right to bridge the stream without legislative permission. Ft. Plain Bridge Co. v. Smith, 30 N. Y. 44. No such permission has ever been given either the claimant or its lessor. The bridging of the creek without such permission was a trespass, and the state is not liable to compensate the claimant either for the bridge destroyed or for the destruction of the roadway constituting the approaches to the bridge. It may be, where piers and docks are built by adjoining proprietors to facilitate access to a navigable stream, that their destruction even for the improvement of the stream entitled the owners to compensation. But these structures were not built to facilitate access to the stream. They were built to cross the stream without the required permission, and for their destruction in the making of this public improvement the claimant has no equitable claim for compensation.

Fourth. That the state does own the bed of the stream seems to me the necessary construction of the "Artillery Patent." From the lands granted by that patent Wood creek has been explicitly excepted. It cannot matter for what purpose the exception is made. It is here agreed that the state now owns whatever did not pass by the "Artillery

Patent." In Lewis Blue Point Oyster Cult. Co. v. Briggs, 198 N. Y. 287, 91 N. E. 846, it is held:

"In patents from a sovereign to a subject the rule of construction which controls deeds between individuals is reversed, and the terms are taken most strongly against the grantee because the public interest is involved."

Under this rule of construction it can hardly be doubted that under this patent the title to the bed of Wood creek remains in the state.

The judgment should, therefore, be affirmed, with costs.

Judgment affirmed, with costs. All concur; KELLOGG, J., in memorandum.

JOHN M. KELLOGG, J. (concurring). At the time of the original patent, 1,764, and for many years before, Wood creek was used as a passageway for canoes and like craft from Lake Champlain to the Hudson river. This included a carry from near Ft. Ann to Ft. Edward, about 11 miles. Within the knowledge of men now living, the creek has not been used for any such purpose, and is an ordinary creek from 7 to 15 feet wide, from 6 inches to 2 or 3 feet deep, the water of which runs within banks 2 or 3 feet in height, and it has not been used as a public highway or for boating.

The patent, in terms, includes and conveys Wood creek, and there would be no doubt that the title was in the grantee except for the reservation, which provides "excepting said Wood creek, which is reserved as a common highway for the benefit of the public," and later in the patent it is recited that it grants unto the patentee the premises before described, and every part and parcel thereof, except it reserved out of said grant to the King, his heirs and successors, the mines and minerals, "and also except Wood creek for the uses above mentioned." I think the latter clause makes emphatic the extent of the reservation, and shows that the clear intention of the parties was that the use of Wood creek was reserved for the purposes mentioned, and that the title to the bed of the creek was not reserved, but it passed to the patentee subject to the right of the public to use the creek as a common highway. And this right to use the creek must be interpreted with reference to the use theretofore and then existing, and cannot justify the filling up and annihilation of Wood creek, the turning of the waters thereof into a canal which is supplied with water from other sources, and is 75 feet in width, 9 feet in depth, and intended for the accommodation of boats and barges propelled by steam. This latter is a use which never was intended, and the volume of water flowing through the new canal is so out of proportion to that of the little stream winding through the land that it cannot be justified by reason of the burden cast upon the land by the reservation, but is appropriating the land for another and distinct use. The creek itself was very crooked; the canal is straight; and at the place in question the original creek was made a spoil bank and filled with excavations from the canal, and is about 75 feet distant from the canal itself. The building of the canal cannot be fairly considered an improvement of the original waterway within the terms of the reservation, but is a separate, distinct appropriation of land

for canal purposes. I think that under the terms of the patent the bed of Wood creek became a part of the grant and passed to the patentee, subject to the burden of the public use, in substantially the manner that it had been theretofore and was then used. We need not say that the substitution of steam and motor boats in place of the canoe would interfere with the rights of the public in using the creek as a common highway, provided it could properly be excavated within about the fair limits of the creek, as it formerly was. I think, therefore, the claimant had the right to build the bridge or trestle across Wood creek.

The state very properly did not assume to exercise the rights which it is there exercising on the theory that it was improving Wood creek, but proceeded upon the theory of a separate condemnation of the land for canal purposes, which course was the only one available to it, and its acts can be justified on no other basis.

The relator, therefore, by the condemnation is substantially deprived of the use of the bridge and trestle, and is entitled to such reasonable damage as it has fairly sustained thereby.

After the state had taken the steps preliminary to a condemnation of the property for the barge canal, and had marked out the line of the canal preparatory to the condemnation, which action was authorized by the statute enacted shortly before that time, the respondent takes a lease of an unused quarry and, in advance of the actual condemnation, builds the bridge and trestle and begins to work the quarry. The findings show facts fairly charging it with knowledge that the barge canal would run between the quarry that it was leasing and the railroad track. Notwithstanding this knowledge, it took the lease and built the trestle. It has suffered no loss that was not directly in view when it took the lease and constructed the trestle, and its lease and improvements were entered upon subject to the work which it knew was imminent. An injury does not come to the willing, and the relator is losing nothing by the barge canal the loss of which was not fully known and discounted in advance, and it has voluntarily assumed the position in which it finds itself. The Court of Claims has awarded it $1,000 damages for an interference with its rights. Its right of way on either side of Wood creek has been interfered with, and I think the award ample.

I therefore concur in the result.