### JOHNSON v. STATE.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. NAVIGABLE WATERS (§ 37*)—CONVEYANCES OF LAND BORDERING ON NAVIGABLE STREAM.

A conveyance of land bordering on a stream used as a route of travel which describes the land as beginning on a side of the stream at low-water mark, thence on certain courses and distances to the waters of the stream, and from thence along the bank of the stream, does not include land within the bed of the stream.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201-226, 285; Dec. Dig. § 37.*]

2. NAVIGABLE WATERS (§ 37*)—CONVEYANCES OF LAND BORDERING ON NAVIGABLE STREAM.

A crown patent of land bordering on a stream excepted the stream which was reserved as a common highway for the benefit of the public. The estate of the patentee was forfeited by legislative act and the commissioners of forfeiture appointed by a statute with authority to convey the title and interest of the patentee conveyed the land of the patentee described as "to Wood creek, thence down said creek as it winds and turns * * * to the place of beginning." *Held*, that the conveyance by the commissioners did not pass title to any land within the bed of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

creek, the title to which on the formation of the government vested in the state.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

3. NAVIGABLE WATERS (§ 37*)—PATENTS—CONSTRUCTION.

The terms of a patent from a sovereign to a subject are taken most strongly against the subject because public interest is involved, and a patent of land bordering on a stream which excepts the stream reserved as a common highway for the benefit of the public does not include any part of the stream used from the earliest times as a route of travel between a river and a lake.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

4. EMINENT DOMAIN (§ 262*)—PROCEEDINGS—APPEAL.

Where the state appropriated a tract of land bordering on a stream constituting a public highway for a canal, the court on appeal from the award of damages must assume that the commissioners in making the award considered the fact that the land was more valuable because situated on a stream with the consequent rights to the use of the waters thereof than if the land had been without the benefit of such water rights, and no additional award should be made by reason of the situation of the land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 681–686; Dec. Dig. § 262.*]

5. EMINENT DOMAIN (§ 241*)—ACQUISITION OF LAND—DAMAGES—CLAIMS.

Where a claim for damages for the taking of land by a state for a canal was based solely on a permanent appropriation of a parcel of land, water privileges, riparian rights, and damages caused by the depreciation of the remainder of the owner's land because of such appropriation, an award for damages on account of the necessary overflowing of additional lands could not be awarded because the state had no notice that any such claim would be urged.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 621–625; Dec. Dig. § 241.*]

6. EMINENT DOMAIN (§ 93*)—ACCRUAL OF RIGHT TO DAMAGES.

Such claim cannot prevail, as no damage will accrue until the canal has been filled, so that the extent of the overflow can be determined by a consideration of the height at which the water will be maintained in the canal and the extent of the seepage.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 237, 238; Dec. Dig. § 93.*]

Appeal from Court of Claims.

Action by Charles A. Johnson, as executor of Jane B. Johnson, deceased, against the State of New York. From a judgment of the Court of Claims (62 Misc. Rep. 15, 116 N. Y. Supp. 253) granting insufficient relief, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

N. R. Holmes, of Troy, for appellant.

W. W. Chambers, Dep. Atty. Gen., for respondent.

LYON, J. This is an appeal by the claimant from a judgment of the Court of Claims awarding appellant $594.65 on account of the permanent appropriation of 6.56 acres in the town of Whitehall, Washington county, N. Y., for the purposes of the Barge Canal. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appellant is dissatisfied with the award for the reasons that it allows him no damages for the appropriation of alleged riparian rights in Wood creek, bordering the east and north sides of the 6.56-acre piece, and allows him nothing for damages which he claims will necessarily be sustained by reason of the overflowing of about four acres of land westerly of the lands so appropriated.

It appears by the record that the farm of the appellant's testatrix is a portion of the tract of about 25,000 acres,. through which ran Wood creek, granted in 1765 to Philip Skeene and others by crown patent, known as the "Skeensborough patent." Among other exceptions contained in said patent were the following: "Excepting the said Wood creek which is reserved as a common highway for the benefit of the public"; and "also except Wood creek as aforesaid for a common and public highway." Wood creek seems to have been used from the earliest times as a route of travel between the Hudson river and Lake Champlain. In the Revolutionary War Skeene sided with the crown, and by an act of the Legislature of the state of New York, passed in 1779, he was convicted and attainted of treason, and all his estate, both personal and real, was declared forfeited to and vested in the people of the state. An act was passed providing for the appointment of commissioners with authority to sell and convey "all and singular the estate, right, title. and interest in and to the said premises which in consequence of any conviction or attainter has become forfeited or vested in and to the said estate."

It appears that pursuant to this act the commissioner of forfeiture conveyed certain lands, including this farm, describing the boundary on Wood creek as follows:

"To Wood creek, then down said creek as it winds and turns  *  ,*  *  to the place of beginning."

It further appears that thereafter down to 1867, when title was acquired by the husband of claimant's testatrix, the boundary line on Wood creek was stated as running at low-water mark, and thence along the bank of Wood creek at low-water mark. The boundary stated in said deed of 1867, as well as in the deeds of the husband of claimant's testatrix and herself to Almon Bartholomew, and of him to her, executed in 1876, as far as is necessary to be considered. at this time, is as follows:

"Beginning on the west side of Wood creek at low-water mark at the southwest corner of Miles Johnson's farm [thence on certain courses and distances] to the waters of Wood creek, from thence along the west bank of Wood creek to the place of beginning, containing one hundred and seventy acres of land be the same more or less."

[1] The boundary line of the land of claimant's testatrix having been located in this conveyance to her along the bank of the stream, the parties to the conveyance will be held to have intended to limit the land conveyed to that within such boundary line and not to include land within the bed of the stream. Halsey v. McCormick, 13 N. Y. 296; Matter of Brookfield, 176 N. Y. 138, 145, 68 N. E. 138.

[2] There is no merit in the contention of claimant that the grantee under the conveyance of the commissioner of forfeiture acquired title

to the center of Wood creek by reason of the grant being "to Wood creek, thence down said creek as it winds and turns * * * to the place of beginning." The claimant asserts title to the bed of Wood creek under no other conveyance, and the commissioner of forfeiture was limited to the sale and conveyance of the interest Skeene had in the lands conveyed. By reason of the words of exception as a common highway in the patent of Wood creek to Skeene and others, the title to the bed of the creek remained in the crown and never passed to Skeene, and upon the formation of our government vested in the state. This was expressly held in Champlain Stone & Sand Co. v. State of New York, 142 App. Div. 94, 127 N. Y. Supp. 131, and that decision was affirmed by the Court of Appeals at the March term, 1912, upon the ground that by the exception of Wood creek the title thereto was in the state. While the construction of the patent there involved was the "Artillery patent," yet the wording of the exception of Wood creek is practically identical in that patent with the wording in the "Skeensborough patent," which it adjoined.

[3] Furthermore, if the conveyance by the commissioner of forfeiture might be subject to the construction asserted by the claimant, yet under the proofs as contained in the record disclosing the use of Wood creek as a common route of travel from the earliest times, and indicating an intent of the sovereign to reserve it as a common highway, the construction would be applicable that in patents from a sovereign to a subject the rule of construction which controls deeds between individuals is reversed, and the terms are to be taken most strongly against the grantee because the public interest is involved. Lewis Blue Point Oyster Co. v. Briggs, 198 N. Y. 287, 91 N. E. 846, 34 L. R. A. (N. S.) 1084, 19 Ann. Cas. 694. As was said by Senator Beardsley in Canal Appraisers v. People, 17 Wend. 571, 612:

"Where patents have been bounded on fresh navigable rivers in this state and nothing appears from the grant that the state intended to part with the bed of the river, the patentees shall not by an implied grant take the river to the exclusion of the state where the state wishes to use it for public purposes."

[4] As to the amount of the award for the appropriation of the 6.56 acres, it is to be presumed that the commissioners in making the award took into consideration the fact that this land appropriated was more valuable situated upon a creek with the consequent rights to the use of the waters thereof than had the land been without the benefit of such water rights, and hence no additional award should be made to claimant by reason thereof.

[5] As to the claim of appellant that he should have been awarded damages on account of the necessary overflowing of about four acres of additional lands, it appears from the findings of the trial court that the elevation thereof adjoining the creek ranges from 111 to a little over 112, while the ordinary elevation of the bank of Wood creek is 112.5 and the elevation of the Barge Canal at the ordinary navigable stage at the land in question will be 112, and at the highest navigable stage 113.9. Thus the 4.6 acres referred to, as the court finds, "may be flooded during navigation season while the water in the canal is at

its ordinary navigable stage," and may be rendered "useless for farming purposes." But the claim herein, and the bill of particulars annexed thereto, are based solely upon the permanent appropriation of the 6.56-acre parcel of land, water privileges, riparian rights, and the damages sustained by reason of the depreciation of the remainder of testator's lands because of such appropriation. In the claim filed herein no mention whatever was made of alleged damages on account of the contemplated overflowing of the additional 4.6 acres. Hence the state had no notice that upon the hearing any such claim would be urged, and each of the witnesses called by the state said that he was not prepared to testify upon the subject, with the exception of the single witness who placed such damages at nothing.

[6] No damages whatever will exist until the canal has been filled, and to what extent the claimant's lands will be flooded is uncertain, and will depend in large measure upon the height at which the water shall be maintained in the canal and to the extent of the seepage. The mere fact that, when the canal comes to be operated, certain lands may be flooded, did not of itself entitle the claimant to have such contemplated damages fixed at the hearing had herein.

As was said in the case of New York Central & Hudson River Railroad Company v. State of New York, 37 App. Div. 57, 55 N. Y. Supp. 685:

"At a time when nothing has been done by the state to interfere with or control the possession of land by its owner, and no notice of appropriation has been served on him, the entry by the state upon the site of a proposed dam, and the commencement of the work of constructing the dam, does not constitute an appropriation or taking possession of what may be the flow ground of the dam when constructed, a mile above it, although the flow line of the proposed dam had been run some ten years before and intermittent efforts have meanwhile been made towards building it."

Omitting to pass upon the question of claimant's damages for such possible or probable flooding in no way prejudiced claimant's rights or precluded him from presenting such claim for damages as may in fact occur.

We find no exceptions calling for a reversal of the judgment, and the same should be affirmed, with costs.

Judgment unanimously affirmed, with costs.