JOHN J. CALLANAN, Respondent, *v.* EMILY M. KEENAN, as Executrix, etc., of DAVID F. KEENAN, Deceased, Appellant.

Third Department, July 2, 1917.

Chattel mortgage — suit of foreclosure — defenses — alleged fraud of mortgagor and breach of covenant contained in deed — evidence not establishing defenses — breach of warranty not available when grantee knew facts at time of conveyance — appropriation of lands by State for canal purposes — conveyance of supposed right to cross public highway — mistake of law.

Suit to foreclose a chattel mortgage given to the plaintiff upon machinery in a quarry to secure part of the purchase price of the quarry which the plaintiff had conveyed to the defendant's intestate by a warranty deed. The foreclosure is defended upon the ground of fraudulent misrepresentation by the plaintiff respecting the quality of the machinery covered by the chattel mortgage and as to the previous business of the quarry, and because of an alleged breach of warranties contained in the deed resulting from the appropriation of a portion of the land by the State for the purposes of the Barge canal. Evidence examined, and *held*, insufficient to establish any fraud upon the part of the plaintiff, as the defendant's intestate, an expert quarryman, had purchased the property with full knowledge of all the facts and with knowledge that the land had been actually appropriated for the Barge canal, or was about to be appropriated, and that in fact the condemnation of the property by the State was one of the inducements which led him to make the purchase.

Although there was a technical breach of covenant, it was in respect to matters which the grantee knew at the time of the conveyance, and,

therefore, his representative cannot recover damages for the breach. A covenant is only effectual as to a party who has no knowledge to the contrary and who acts upon the credit of the covenant.

Where the plaintiff assigned to his grantee all claims against the State, and the grantee, after using the land for many months, presented a claim against the State and asserted that the business had been greatly improved, the plaintiff cannot be charged with damages because in a subsequent judicial decision in a suit between other parties it was held that Wood creek was a public highway and that no award should be made for a right to cross the same, which supposed right was included in the plaintiff's deed. This, because the mistake was a mistake of law.

APPEAL by the defendant, Emily M. Keenan, as executrix, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 3d day of January, 1916, upon a decision of the court after a trial at the Saratoga Special Term.

*Charles Irving Oliver,* for the appellant.

*Visscher, Whalen & Austin* [*J. Harris Loucks* of counsel], for the respondent.

KELLOGG, P. J.:

In July, 1908, the Barge canal had been surveyed and the contracts let along Wood creek, crossing the gravity railroad which connected the plaintiff's quarry with the Delaware and Hudson railroad, the gravity road crossing Wood creek on a trestle. Plaintiff owned the right of way from Wood creek to the railroad, and had a lease of the Tub Mountain quarry and a right of way for the gravity road from the quarry to Wood creek. Wood creek was a natural highway, the title of which was in the State and the trestle crossing the creek was there by sufferance and not by right. The State had filed and served its map and had thereby completed the appropriation of the canal route along the creek in April, 1908. July 31, 1908, the plaintiff deeded to the defendant's intestate the land west of Wood creek and assigned him by another instrument the leases covering the quarry, the right of way for the gravity railroad, together with the appliances, buildings and machinery. The plaintiff took back a mortgage for a part of the purchase price, which is being foreclosed in this action. Keenan, the intestate, was a bright, keen business man with extensive knowledge

of operating quarries and in contracting. He was interested in and was carrying on quarries in various places. He sought the plaintiff and entered into negotiations with him for the purchase of the quarry. He went to the quarry and investigated there for several days. His nephew, who was to operate the quarry, was with him. He sent for two expert quarrymen, who were engaged in operating quarries for him elsewhere, to examine the property and assist him in investigating it. He apparently took nothing for granted, saw the plant operated, investigated the alleged contracts, the customers of the quarry and conducted the negotiations in a way that a thorough-going, keen, shrewd business man would in making such an investigation. One of the inducements held out to him, as a reason for the purchase and as a probable profit, was the fact that the Barge canal was to be constructed in the immediate vicinity and within 1,500 feet of the bins. The canal, a short distance from the trestle, was actually being worked and enlarged along Wood creek. It was evidently known by the people interested in the quarry and who were engaged in business in that locality, where the route of the Barge canal was, and the record cannot be read and Mr. Keenan's character appreciated without conviction that he knew just where the canal had been surveyed and laid out and that the contractors were about to begin active operations. The plaintiff gave him a warranty deed of the premises and at the time it was given, the premises, to the knowledge of the plaintiff and undoubtedly of Keenan, had been appropriated by the State. The negotiations had been pending between the plaintiff and the State and railroad officials from which it was naturally assumed that a temporary structure would permit the gravity road to operate over the canal after the contractors had actually taken possession and begun work and it was anticipated that a permanent bridge to replace it would be built by the State.

The defendant alleges the breach of this warranty as a counterclaim to the plaintiff's claim and various frauds alleged to have been committed by the plaintiff in misrepresenting the quality of the machinery and appliances and the contracts and customers of the quarry and the evidence to sustain these counterclaims was furnished by the nephew of Mr. Keenan;

and he has located all the transactions between Keenan and the plaintiff at times when only the three were present, so that his testimony cannot be contradicted by the evidence of any living witness. The two experts assisting Keenan, who must have had important knowledge of the facts, were not called as witnesses.

The trial judge has properly commented upon that and has refused to find the principal facts sworn to by this witness. That action upon the part of the trial court is approved. The circumstances, the known facts in the case, contradict the testimony of the witness and establish beyond question that Mr. Keenan bought the property with his eyes open as to the quality and character of the property and as to the route of the canal. He knew that either the land had actually been appropriated for the canal across the gravity road or was about to be. From the correspondence afterwards and the fact that he continued to operate the quarry after the State had dispossessed him in whole or in part with no complaint upon his part that he had been deceived as to the title, the conclusion is irresistible that he was under no mistake as to the true situation of the title of the property. He probably felt that by furnishing stone for the Barge canal and the contractors, and by enlarging the business, he would have a large claim against the State for damages on account of the appropriation. In November, 1909, Keenan was insisting that his checks to plaintiff should show a settlement in full, saying: " Our method of doing business is to complete the settlements of all our accounts to the first of each month, and we trust this will be satisfactory." At that time he knew that the State had begun in part to dispossess him from the land taken and knew the facts with reference to it, but made no complaint. If he had a grievance as to the title he would not have been insistent that the check should be a settlement to date. He had found some fault with the plaintiff on account of the condition of the quarry and certain of the machinery and claimed that he had not been fairly dealt with in those respects, but we find no claim by him that he had been deceived about the title to the property, or that at the time of the purchase he had any doubt that the Barge canal was to cross the gravity railroad. February 1, 1910, he writes his attorney:

"All I want him to do, is to live up to his agreement with me both verbal and written. I don't want a dollar from him. I have suffered a large financial loss by means of failure of the State to guarantee a bridge, also inability to make and sign contract for future delivery of stone, as I could not promise to deliver a certain number of yards daily, Callanan guaranteed me this connection verbally. I took his word for this, as I did in a great many other things, so I think he should be held responsible for this."

There is no suggestion that he was deceived by the location of the Barge canal or that before the property had been deeded to him it had been taken over by the State. His only complaint with reference to the property is that the State had failed to guarantee a bridge. He could not claim that he had been guaranteed a bridge across the canal unless it was understood by both of them at the time that the existence of the canal made such a crossing necessary.

November 8, 1909, his attorney writes the plaintiff reciting the fact that before the deed was given the State had appropriated the land over the canal and that unless a bridge or some other manner of approach from the quarry to the railroad was built the quarry would be valueless. "Mr. Keenan was assured at the time of the transfer that the State would build such a bridge. There seems to be considerable question on the part of the State as to whether it will build a bridge or not. If it does not * * * it should be compelled to respond in damages to the owners of the quarry for destroying their right by such appropriation." He then says that the claim for damages must be filed within two years from the appropriation, and that in order to protect Mr. Keenan's rights he is preparing a claim for the damages sustained by the appropriation. He continues: " I find that there is no written assignment to him from you of any claim you might have against the State by reason of such appropriation. Before filing the claim it is essential that we have such a written assignment. Will you kindly advise me by return mail on what day you can come to my office and execute such an assignment?" The assignment was executed and Mr. Keenan filed a claim against the State for $252,600.

It is evident that the result in *Champlain Stone & Sand*

*Co.* v. *State of New York* (142 App. Div. 94; 205 N. Y. 539) satisfied him, from the fact that Wood creek was a public highway and the gravity road had no right to cross it as against the State, that the damages to be recovered from the State must be small for the land appropriated was practically of no value but rested entirely so far as its value to the quarry was concerned in the right to cross Wood creek. The canal at this place does not follow the bed of the creek but is adjacent to it.

We are satisfied that Mr. Keenan knew at the time he made the purchase and accepted the deed that the State had appropriated the land west of the creek for the Barge canal and that the fact that the canal was to go in that vicinity was one of the inducements which led him to make the purchase. Technically, therefore, there is a breach of covenant but it is in a respect that the grantee knew at the time that the grantor had not title to the premises now occupied by the canal and spoil bank and upon a covenant given under such conditions he could not recover damages for its breach. He knew at the time he took the deed that the grantor had no title. The covenant is only effectual as to a party who has no knowledge to the contrary and who acts upon the credit of the covenant.

It is said that the damages following a breach of covenant of quiet enjoyment is the purchase price with interest thereon. That is said to be the rule where there is failure of the entire consideration, but all legal rules are subject to their exceptions and must have a reasonable application. (*Hunt* v. *Hay,* 214 N. Y. 578.)

The plaintiff's contention is, as we understand it, that it is immaterial whether the land west of the creek had or had not any value and whether if the State had not already taken title it was about to do so; that there is a technical breach of covenant, and that the damages must be awarded for the purchase price and interest or, as the failure of title relates only to a part of the property purchased, that the damages are the purchase price with interest less the value of the property as it remains in its present condition. We do not think that the rule applies to this case and cannot give it application here. It is not certain that either Callanan or

Keenan realized that the title to the land had actually passed to the State. Undoubtedly, each knew that the map had been filed and served and any want of knowledge as to the title came from an error as to the legal effect of those facts. It is beyond doubt that it was the understanding of both parties to the deed that the land between the creek and the railroad was to be used by the State for the canal and the right intended to be conveyed by the deed was the right to use the land until the State actually dispossessed the owner and then to make claim against the State for appropriating the property. The assignment of the claim against the State subsequently made by Callanan was a performance of the spirit of the understanding of the parties at the time the deed was given. The assignment confirmed to Keenan all rights that either expected he would acquire by the deed. He used the land for many months and then presented his claim against the State claiming that the business had greatly improved since his purchase. *Champlain Stone & Sand Co.* case, above referred to, undoubtedly was a surprise to both parties as it deprived the owner of any substantial claim for the land taken. But the plaintiff is not responsible for that. The facts were known and the mistake of Keenan was one of law and not of fact. If he were entitled to recover any damages for the breach of covenant they would be trivial. The fact that the map was filed and served a few days prior to the deed is not material. It was executed with the knowledge of the fact that the appropriation had or would shortly be made, and the defendant suffers no less from the fact that the appropriation took place a few days before the deed was given. The result would have been the same if it had taken place a few days later.

We do not know whether the plaintiff or Mr. Keenan knew at the time that this little stream called Wood creek was a navigable public highway and that neither of them could have any right to cross it except with permission of the State. If they were mistaken in that respect it was a mistake of law. They knew it was Wood creek and as a matter of fact Wood creek was a public highway. The land west of the creek, therefore, had no substantial value and if there was a breach of covenant its value depended entirely upon the

right to cross Wood creek which could not be obtained. The amount recoverable could only be nominal; the conveyance mentions one dollar as the consideration of the deed.

The judgment should, therefore, be affirmed, with costs.

All concurred.

Judgment unanimously affirmed, with costs. The court finds as a fact that the defendant's intestate, the grantee at the time of the purchase of the property and the acceptance of the deed, knew the location of the Barge canal which had been laid out through the premises and knew that the property deeded was to be taken or had been taken for canal purposes and it was made with the mutual expectation that the grantee would acquire the use of the premises until the State actually dispossessed him and they would probably be able to obtain from the State a bridge or compensation for damages.