SARAH H. BARNES et ·al., Appellants, *v.* THE MIDLAND RAILROAD TERMINAL COMPANY, Respondent.

1. RIGHT OF THE PUBLIC TO USE THE FORESHORE. The public has the right to use the foreshore upon the margin of our tide waters for the purposes for which a right of passage is a necessary incident. A littoral owner in his capacity as such acquires only those rights which are necessary to enable him to make a reasonable use of his upland. The public has a right to pass over a beach between high and low-water mark, and unnecessary interference therewith by a litoral owner is an invasion of such right.

2. GRANT TO LITTORAL OWNER CONSTRUED. A littoral owner received a grant from the state containing certain conditions which, if literally interpreted, would annul the grant. *Held*, that such conditions must be construed so as to give the patent its reasonable and obvious meaning.

3. RIGHT OF PERSON AGGRIEVED TO RESTRAIN UNLAWFUL USE OF FORESHORE. Where a littoral owner erected a pier and structure in such a manner that the effect was to obstruct the passage of the public to and from plaintiff's premises, *held*, that while he had a right to erect a pier he could not unnecessarily interfere with right of passage over the beach by the public; the plaintiff, having shown special injury, is entitled to enjoin defendant from obstructing or interfering with the passage of the public over the beach between high and low-water mark in front of defendant's upland. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, followed.)

*Barnes* v. *Midland R. R. Terminal Co.*, 126 App. Div. 435, reversed.

(Argued October 19, 1908; decided November 10, 1908.)

APPEAL, by permission, from that part of an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 1, 1908, which affirmed so much of an interlocutory judgment of Special Term as denied plaintiffs' application for an injunction to restrain the defendant from obstructing or interfering with the passage of the public over the beach in front of its upland between high and low-water mark.

During the period mentioned in the complaint the plaintiffs (with the exception of Putnam, a lessee) were the owners of certain uplands upon Staten Island, fronting on the waters of New York bay. At the same time the defendant was the owner of land similarly located, but separated from plaintiffs' land by a public road known as Red lane or Lincoln avenue, which runs to the shore and terminates at a bulkhead. The lands of both parties have been so improved as to fit them for use as resorts for public recreation and amusement. This suit was instituted to restrain the defendant from doing certain acts which it is claimed constitute unlawful injuries to plaintiffs' property and their rights therein. These acts, briefly summarized, consist of the defendant's alleged obstruction of a public highway known as the Sea Side boulevard, so as to interfere with the passage of the plaintiffs and the public to and from plaintiffs' property; of the defendant's erection and maintenance of a pier extending from its upland into the water; of the building of fences and other obstructions underneath the pier, and a platform with the buildings thereon alongside the pier; by which means it is claimed the defendant has obstructed the passage of the public over the land between high and low-water mark and interfered with the right of the public to reach plaintiffs' premises over the beach; and that the defendant has also interfered with such passage by the public, by operating a sand pump and maintaining a sewer which casts water and sewage upon the plaintiffs' premises.

The referee before whom the trial was had made extended findings of fact, only a few of which are material to the

present phase of the controversy. Among other things he found: That on April 2nd, 1902, the defendant obtained letters patent from the state, granting to it the right "To erect on the lands under water herein granted a pier or piers and buildings or structures of a substantial character," and conveying the land under water to the defendant upon the following condition: "That the party of the second part (defendant), its successors and assigns, shall not make, erect or maintain, or cause or allow to be made, erected or maintained, any fence, building, excavation or other obstruction of any kind in or upon land lying between the lines of high and low water as they now exist, or hereafter shall exist, that shall in any manner obstruct, interfere with, inconvenience, or prevent any person or persons from, or in crossing and recrossing in any manner or way said land between high and low-water mark.  *  *  * "

"That in 1900 and in 1901, prior to obtaining its said letters patent, the defendant constructed a pier from its said upland tract out into the Bay about 1,700 feet, the shore end thereof stretching over the beach between high and low-water mark,  *  *  *  which pier was so constructed as to hinder, obstruct, and at certain times of the tide, completely to prevent the public from passing along the beach dryshod between high and low-water mark under the pier." That the defendant also constructed a platform alongside said pier and between it and the bulkhead at the foot of Red lane, which platform extended out over high-water mark, which as first constructed did not interfere with the passage of the public over the beach between high and low-water mark; and that in 1901, and in order to hinder, obstruct and prevent the public from passing under and over the plaintiff's premises, the said defendant maintained certain planks from spile to spile under the pier so as to form a fence barring passage, and erected a shed on the platform extending to the sea end thereof;  *  *  *  and the construction of said planks from spile to spile under the pier, and the maintenance of said shed upon the platform next to the pier, were such that no persons could

pass under said pier at certain times of the tide without climbing said fence.   *   *   *"

The referee also found that certain other acts of the defendant, such as building a trestle and track across the beach from the sand pump to a point about 200 feet from the shore end of the pier, and the dripping of water from a sand bin erected by the defendant, interfered with the passage of the public dryshod over the beach between high and low-water mark to the plaintiff's premises.

The referee further found that the acts of the defendant in maintaining the pier as above described and in permitting water to drip over the beach between high and low-water mark were in violation of the above-quoted condition in its grant from the state.

As conclusion of law the referee held : " That the acts of the defendant in building and maintaining its pier and in the construction of a shed on the platform adjoining the bulkhead at Red Lane, and in building the trestles to its sand bin at the foot of Red Lane, and in its operation of the same — although by such acts the public were and are prevented from having free passage to Woodland Beach (plaintiffs' property) over the platform and over the beach between high and low-water mark, and although its pier is built and maintained in violation of the conditions in the grant to it from the state of the lands under water — are not such as entitle the plaintiffs or either of them to relief.   There being no right in the public to pass over the beach between high and low-water mark, and the state alone having the right to enforce the conditions on which the grant was made."

The referee also decided that the defendant should be perpetually restrained from obstructing the Sea Side boulevard, except upon certain conditions; from permitting sewage to flow upon plaintiffs' premises; and that the plaintiffs were entitled to an accounting for the damages sustained by reason of the acts which he decided should be enjoined.

Both parties appealed to the Appellate Division from the judgment confirming the referee's report.   The Appellate Divi-

sion affirmed the judgment, but gave plaintiffs permission to appeal to this court, certifying for our determination the following question of law : " At the time this action was begun was there any right in the public to pass over the beach between high and low-water mark at the defendant's summer resort known as Midland Beach ? "

*John Brooks Leavitt, Stuart G. Gibboney* and *Albert H. Atterbury* for appellants. At that part of the state's seashore situate on the south side of Staten Island, and known as Midland Beach, the public has the right of passage between high and low-water mark. (Const. of N. Y. art. 1, § 10 ; 1 R. S. ch. 1, tit. 1, § 1 ; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522 ; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74 ; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79 ; *People* v. *Tibbetts,* 19 N. Y. 523.) The People have the right of passage over their own property, parks and forests, highways and waters. (*Murphy* v. *City of Brooklyn*, 99 N. Y. 642.) Even if the public has no general right to go upon its foreshore as in its forests, it obtained that right as to the *locus in quo* by virtue of express contract between the state and the defendant. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 130 N. Y. 88 ; *People* v. *Saxton*, 15 App. Div. 263, 154 N. Y. 748 ; *People* v. *Woodruff*, 54 App. Div. 1 ; *People* v. *Vanderbilt*, 26 N. Y. 287; *Craig* v. *Wells*, 11 N. Y. 315 ; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574.) So long as the public has the right of passage along the beach, it is immaterial to inquire whether it exists by paramount right or was created by particular contract. (*Wakeman* v. *Wilbur*, 147 N. Y. 657; *Callanan* v. *Gilman*, 107 N. Y. 370; *Milhau* v. *Sharp*, 27 N. Y. 611 ; *Driggs* v. *Phillips*, 103 N. Y. 77.)

*George D. Beattys* and *Lawrence W. Widdecombe* for respondent. Defendant as an ordinary riparian owner on navigable waters where the tide ebbs and flows, even without any grant of the soil under the water between high and low tide, has the right to construct a pier for its own use out into and over the water, and even though such structure obstructs

the public in passing over the beach, between high and low water mark. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *T. I. S. Co.* v. *Visger*, 179 N. Y. 206; *People* v. *Mould*, 37 App. Div. 35; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Yates* v. *Milwaukee*, 10 Wall. 497; *Sisson* v. *Cummings*, 35 Hun, 22; *Wetmore* v. *G. B. L. Co.*, 42 N. Y. 384; *Downes* v. *E. B. Co.*, 41 App. Div. 339; *Ledyard* v. *Ten Eyck*, 36 Barb. 102.) Respondent, as the grantee of the state of the lands under water, has an additional right on that account to exclude the public from the foreshore by the erection of the structures complained of. (*Cox* v. *State*, 144 N. Y. 369; *Sage* v. *Mayor, etc.*, 154 N. Y. 70; *Matter of City of New York*, 168 N. Y. 134; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *T. I. S. Co.* v. *Visger*, 179 N. Y. 206; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Knicker-bocker Ice Co.* v. *Shultz*, 116 N. Y. 382; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *People* v. *Mould*, 37 App. Div. 35; *Nolan* v. *R. P. I. Co.*, 76 Hun, 458; *Sisson* v. *Cummings*, 35 Hun, 22.) The right to question or take advantage of any breach of the conditions of a state grant is vested in the state alone; plaintiffs have no such right. (*Brewster* v. *Striker*, 2 N. Y. 19; *Chatfield* v. *Simonson*, 92 N. Y. 209; *Squires* v. *Abbott*, 61 N. Y. 530; *Moore* v. *Hitchcock*, 4 Wend. 293; *Jenkins* v. *Miller*, 14 App. Div. 480, 482; *D. & H. C. Co.* v. *Lawrence*, 2 Hun, 163; *F. W. B. Co.* v. *Smith*, 30 N. Y. 44, 63; *People* v. *Jessup*, 160 N. Y. 249; *Kerr* v. *West Shore R. R. Co.*, 127 N. Y. 269; *K. I. Co.* v. *Shultz*, 116 N. Y. 382.)

WERNER, J. Our recent decision in *Town of Brookhaven* v. *Smith* (188 N. Y. 74) very materially simplifies the question submitted to us for decision in the case at bar. In that case it was definitely settled that in this state a riparian owner whose land is bounded by navigable water has the right of access thereto from the front of his land, and that such right includes the construction and maintenance of a pier on the

land under water beyond high-water mark, for his own use or for the use of the public, subject to such general rules and regulations as Congress or the state legislature may prescribe for the protection of the rights of the public. So thorough was the discussion in that case of the principles involved, and so exhaustive the citation of authorities bearing upon them, that we can now add nothing except to say that the doctrine there enunciated is as applicable to littoral owners whose lands front upon the surf-beaten shore of the open ocean, as to riparian owners whose lands border upon bays of the sea, inland lakes or other navigable waters.

It is clearly pointed out in the *Brookhaven* case that the rigid rules of the common law of England relating to littoral and riparian rights are not adaptable in every particular to our political and geographical conditions; that in adopting the common law of the mother country we did not incorporate into our system of jurisprudence any principles which are essentially inconsonant with our circumstances or repugnant to the spirit of our institutions; that the *jus privatum* of the crown, by which the sovereign of England was deemed to be the absolute owner of the soil of the sea and of the navigable rivers, was totally inapplicable to the conditions of our colonies when the common law was adopted by them and that this right, from the first settlement of our province, seems to have been abandoned to the proprietors of the upland so as to have become a common right and thus the common law of the state.

The same reasons which underlie the decision in the *Brookhaven* case as to the rights of littoral and riparian owners, apply with even greater force to the right of the public to use the foreshore upon the margin of our tide waters for fishing, bathing and boating, to all of which the right of passage may be said to be a necessary incident. Except in so far as the *jus privatum* of the crown has devolved upon littoral and riparian owners, that right now resides in the people in their sovereign capacity. This is the logical result of our decision in the *Brookhaven* case, and it is in harmony with the development of our history and the spirit of our institutions.

The bare statement of these propositions brings into the foreground of the discussion the question at issue in the case at bar.   Where is the line of demarcation between the rights of littoral and riparian owners on the one hand and the rights of the public on the other ?   That is obviously a question which cannot be answered with categorical precision in all its bearings.   It may, however, be answered with sufficient definiteness to enable us to make a satisfactory disposition of the question which has been certified to us.   "At the time this action was begun was there any right in the public to pass over the beach between high and low-water mark at the defendant's summer resort known as Midland Beach ?"

This action was commenced in July, 1905.   At that time the defendant held the land under water in front of its uplands by virtue of letters patent from the state bearing date April 2nd, 1902, under which it acquired the right " To erect on the lands under water herein granted a pier or piers and buildings of a substantial character," but the grant was coupled with the condition "that the said party of the second part (defendant), its successors and assigns, shall not make, erect or maintain, or cause or allow to be made, erected or maintained, any fence, building, excavation or other obstruction of any kind in or upon land lying between the lines of high and low water as they now exist, or hereafter shall exist, that shall in any manner obstruct, interfere with, inconvenience or prevent any person from or in crossing and re-crossing in any manner or way said land between high and low-water mark."

It is apparent from the most cursory reading of this patent that if all its language were to be adopted in its strictly literal meaning, the condition would operate to annul the grant. It would have been impossible, of course, for the defendant to construct a pier or other structure of substantial character to extend from the land under water to the upland without obstructing to some degree the right of passage which the public had along the foreshore.   It is necessary, therefore, to give the condition in the patent its reasonable and obvious meaning, and when that is done it matters but little whether

the defendant rests upon its letters patent or upon its legal right as a littoral owner. The result in either case is the same, and the peculiar language of the patent is referred to only because the referee, in one of his findings, emphasizes the fact that the defendant had constructed its pier a year or two before it obtained its letters patent. It is enough to say that either as littoral owner or by virtue of its letters patent, the defendant had the right to construct and maintain a pier that was reasonably adapted to the purpose for which it was primarily intended, and that was to provide a means of passage from the upland to the sea. To the extent that the reasonable exercise of this right necessarily interfered with the right of the public to pass along the foreshore, the former was paramount and the latter was subordinate; and the logical corollary to that proposition is that just in so far as the attempted exercise of the littoral or riparian right passed the prescribed bounds of necessity and reason, the conditions were reversed and the right of passage along the foreshore remained the paramount right. That is so because the littoral or riparian owner, in his capacity as such, acquires only those rights in the foreshore which are necessary to enable him to make a reasonable use of his upland; and the principal attribute of such use is access to and egress from the open water. The defendant, therefore, had the right to erect and maintain a pier for the purpose of connecting its upland with the sea. Just so far as it was a necessary consequence of the reasonable exercise of that right to obstruct the foreshore and thus to limit the free and convenient passage of the public, the defendant's rights are superior to all others save those reserved to Congress and the state legislature. To the extent that the defendant transcended these bounds, the rights of the public remain unaffected.

At this point in the discussion we must take note of some findings of the referee, which have an important bearing upon the question to be decided. These are to the effect that " in order to hinder, obstruct and prevent the public from passing over the pier to the plaintiffs' premises the said defendant

maintained certain planks from spile to spile under the pier so as to form a fence barring passage ; and erected a shed on the platform extending to the sea end thereof ; * * * " and that the effect of these structures was to hinder and obstruct the passage of the public to and from the plaintiffs' premises. These findings, which are supported by the record, and which have been affirmed by the Appellate Division, conclusively establish the defendant's usurpation of rights which it never acquired as littoral owner, either under its title to the uplands or as patentee by grace of the state and, *a fortiori*, determine that the defendant has invaded the right of the public. In this view of the case, it is evident that the conclusion of law found by the referee, and adopted by the Appellate Division, is not supported by the facts found, and that the question whether the public have any right to pass over the beach between high and low-water mark at the defendant's summer resort, known as Midland Beach, must be answered in the affirmative.

The subject out of which this question arises is one of absorbing interest, which in other circumstances would justify an extended discussion of many incidental questions touched upon in the luminous briefs of counsel. All these related questions are so fully covered, however, by Judge GRAY's very exhaustive historical analysis of the subject, adopted by this court in the *Brookhaven* case, that we may properly dispose of the case at bar with the utmost conciseness. It is unnecessary, therefore, to add anything further except to suggest that the plaintiffs are clearly entitled to maintain this action. Although the right of the public is the thing at issue, the plaintiffs as part of the public have made out a case of special injury and damage which it is the duty of the courts to redress by appropriate remedies. The referee has found that some of the unlawful acts of the defendant have caused special damage to the plaintiffs ; and while the finding in that regard does not specifically refer to the defendant's unauthorized obstruction of the public's right of passage over the, beach or foreshore, it is a necessary inference from the other

facts found that the plaintiffs have suffered such special injury in that behalf as to entitle them to maintain this action.

The question certified is, therefore, answered in the affirma. tive; and the order of the Appellate Division and interlocutory judgment are reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Order reversed, etc.