(165 App. Div. 231)

PEOPLE v. STEEPLECHASE PARK CO. et al.

(Supreme Court, Appellate Division, Second Department. December 31, 1914.)

1. NAVIGABLE WATERS (§ 37*)—CONVEYANCE OF UPLAND—USE OF FORESHORE—RIGHT OF PUBLIC.

Where an application was made to the commissioners of the land office for a grant of the upland bordering on the seashore, the commissioners had no power to convey an unqualified fee of the foreshore for private purposes, and hence such shore was subject to the right of public passage, notwithstanding the grant.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

2. NAVIGABLE WATERS (§ 43*)—"PURPRESTURE"—OBSTRUCTIONS TO SEASHORE.

The term "purpresture" is not limited to an encroachment upon a public right of way on land, but applies to any invasion of sovereign rights along the seashore or the waters fronting thereon.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265; Dec. Dig. § 43.*

For other definitions, see Words and Phrases, First and Second Series, Purpresture.]

3. NAVIGABLE WATERS (§ 43*)—SEASHORE—PUBLIC RIGHT—OBSTRUCTION.

Where the state land commissioners exceeded their authority in granting a fee to upland facing on the sea, the fact that the state suffered structures obstructing the right of public use of the shore to be built without protest did not estop the state from afterwards maintaining a suit to remove them.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. APPEAL AND ERROR (§ 878*)—RIGHT OF APPELLEE.

    Where appellee does not take a cross-appeal, he can be heard only in support of the decree, which rule is still binding on the Appellate Division, notwithstanding the enlargement of its powers to make new findings and render final decrees, conferred by Laws 1912, c. 380, amending Code Civ. Proc. § 1317.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*].

   Appeal from Special Term, Kings County.

    Action by the People against the Steeplechase Park Company and others. From a judgment (82 Misc. Rep. 247, 143 N. Y. Supp. 503) in favor of plaintiff directing the removal of certain encroaching structures from the foreshore of Coney Island, the Steeplechase Park Company and certain of the other defendants appeal. Affirmed.

    Argued before JENKS, P. J., and CARR, STAPLETON, RICH, and PUTNAM, JJ.

    Andrew F. Van Thun, Jr., of Brooklyn, for appellants Steeplechase Park Co. and others.

    Samuel S. Whitehouse, of New York City (C. Walter Randall, of New York City, on the brief), for appellant Emilie Huber.

    William A. McQuaid, Deputy Atty. Gen., for respondent.

    PUTNAM, J. The Attorney General brought this equity suit in the name of the people, to compel defendants to remove certain structures charged to be nuisances upon the foreshore in front of Steeplechase Park, which runs along the water a distance of about 633 feet. It is owned under different titles. Defendant Huber owns the westerly 297.7 feet under a patent or state grant made in 1897. Steeplechase Park owns 148.63 feet easterly, under a patent to Paul Weidmann, granted February 2, 1898. Defendants Tilyou and Hogg own the next parcel, extending easterly 131.11 feet. This leaves about 56 feet not owned by defendants, although they or some of them have it in possession. The beach or foreshore fronting these premises is from about 122 to 126 feet in width.

    There were seven different structures which were claimed to encroach on the public right of passage, namely: (1) A westerly boundary jetty extending at right angles to the beach about 140 feet into low water. (2) A pavilion, supported on piling, extending beyond high-water line 8 feet at the westerly end, and 38 feet at the easterly end. (3) A pier on piles, carrying a 12-inch iron pipe out to sea. (4) The Tilyou boardwalk, about 15 feet high, resting on piles, giving access to the pier, running easterly over the foreshore on piles, to a point beyond the eastern boundary, and thence north at right angles to the upland. (5) A machine race course, supported on five rows of piling. (6) A structure for a roller coaster, erected on piles of which 92 stand out beyond high-water line. (7) A board fence at the easterly boundary, running out from high water 45 feet, whence it is continued by a row of piling a further distance of 88½ feet.

    The Special Term, following the rule of Barnes v. Midland R. R. Terminal Co., 193 N. Y. 378, 85 N. E. 1093, 127 Am. St. Rep. 962, sus-

tained the public right of passage along the foreshore, and directed the removal of parts of the structures complained of (or a change of the structures or those supports which interfered with public access), with the exception of the jetty at the west line of the park (No. 1 above), the pier with the iron pipe (No. 3), and the boardwalk upon piles, known as Tilyou's Walk (No. 4 above), provided they are modified so as to' let people pass beneath. 82 Misc. Rep. 247, 143 N. Y. Supp. 503. Only the Steeplechase Park interests and Emilie Huber have appealed.

[1] The legal right of access to the foreshore is contested, as to the Huber patent, which ran to Huber without qualification. This patent was applied for and granted to her as owner of the adjacent uplands. The learned justice at Special Term held that such a grant, though unqualified in form, not being to promote commerce of the state, must be deemed subject by necessary implication to the right of the public. It was clearly beyond the power of the commissioners of the land office to convey an unqualified fee of such foreshore for private purposes. Matter of Long Sault Developing Co., 212 N. Y. 1, 105 N. E. 849; Coxe v. State, 144 N. Y. 396, 406, 39 N. E. 400. There was no question as to the other grants, since they are in terms expressed to be subject to the rights of the public, by a restriction similar to that in Barnes v. Midland R. R. Terminal Co., 193 N. Y. 378, 385, 85 N. E. 1093, 127 Am. St. Rep. 962.

The court below had to pass on intricate questions of fact, and details of measurement, as well as to alleged fluctuation in the shore lines. The structures in question were erected at different times since the year 1904. Both appellants sought to have the court find, as facts, that both before and since the structures had been put up the sea had encroached violently, taking away the shore by avulsion. But in view of all the testimony the learned court was justified in declining these requests.

Upon this appeal, an issue is raised as to the correct line of mean high water. The proof of this datum has been misconceived. At the Battery in Manhattan there has long been kept a daily tidal record. Its average has been established; from this datum, or that at the Navy Yard, are computed all surveys of elevations, whether out on Long Island or up the state. The corresponding levels are indicated by bench marks, one of which is cut in the middle bridge pier in Coney Island creek. From this, levels are run to fix the equivalent height along the beach, with a rise at Coney Island of two-tenths of an inch, the difference of tidal elevation at Coney Island above that at the Battery. When this horizontal plane has been extended to the actual shore, the contour lines of high and low water are surveyed laterally and staked out along the beach, regardless of what may then have been the accidental state of the water. These high and low water lines are shown by diagrams, but the dates upon the diagrams are of the times of the above surveys, not when the water level was determined.

[2] It is argued that these structures are not purprestures or nuisances. The term "purpresture" is not limited to an encroachment on a public right of way on land, but applies to any invasion of sovereign rights along the seashore or the waters fronting same. Weber v. Harbor Commissioners, 18 Wall. 57, 65, 21 L. Ed. 798. A reading of all

the proofs, with a study of the exhibits, confirms the conclusions that these structures did so invade and block the public rights of free passage.

[3] We cannot hold that the state is estopped by suffering any of these structures to be built without protest. 16 Cyc. 780. Here is an instance of the agents of the state, the commissioners of the land office, in the Huber grant, exceeding their authority; and this is not cured by subsequent inaction by state officials. The judgment restores the public right of shore access, with as little interference with the Steeplechase structures as the circumstances admit. The Huber jetty is allowed as a guard to the beach, to protect defendant's land from the inroads of the sea (Rex v. Commissioners of Sewers of Pagham, 8 Barn. & Cress. 355), provided means are taken to let the public go over or around it. So as to the pier, if its pipe shall be raised to a height of 7 feet, to leave sufficient headroom to pass beneath. The Tilyou boardwalk is also to remain, notwithstanding its long projection above the foreshore, if defendants provide below it suitable means for public passage.

[4] In the absence of any appeal by the Attorney General, we cannot consider his exceptions to the conclusions of law, and to the related portions of the decree, which permit defendants to keep the Huber jetty and the Tilyou boardwalk. The settled rule that an appellee, who takes no cross-appeal, can be heard only in support of the decree, is one necessary for the court, and essential to advise the opposing litigants. Burns v. Burns, 190 N. Y. 211, 82 N. E. 1107; St. John v. Andrews Institute, 192 N. Y. 382, 85 N. E. 143. It still binds this court, notwithstanding the enlargement of its powers to make new findings and to render final decrees, conferred by Laws of 1912, c. 380, amending section 1317, Code of Civil Procedure.

I advise, therefore, to affirm the judgment, with costs. All concur.