Matter of the Application of GIOVANNI AQUINO for a Peremptory Writ of Mandamus against EDWARD RIEGELMAN, as President of the Borough of Brooklyn, and Another.

(Supreme Court, Kings Special Term, July, 1918.)

Lands under water — grant of — when grantee cannot deprive public from right of passage between high and low water mark — deeds.
Mandamus — when motion for writ of, denied.

   Where a perpetual grant of lands, forming the foreshore at Coney Island and under water between high and low water mark, contains nothing to show that it was made either "to promote the commerce of this state or proper for the purpose of beneficial enjoyment of the same by the adjacent owner,"

and there is nothing in the deed to show the term or duration of the grant or to indicate that it was the intention of the state in making it that the public right of passage should be barred or abrogated, the grantee has not and cannot acquire such title to the land between high and low water mark as authorizes him to build permanent barriers across the foreshore the effect of which would be to deprive the public of its right to pass and repass thereon. A motion by such grantee for a writ of mandamus arising upon an order to show cause why respondents should not be compelled to refrain from interfering with relator in the driving of piles and the erection of a fence on the east and west boundary lines of his property "from high water mark southerly and to and into the Atlantic ocean at or below water mark or to the exterior pier line of said property" will be denied.

APPLICATION for a peremptory writ of mandamus.

Hitchings & Burdick (Hector M. Hitchings, of counsel), for petitioner.

William P. Burr, corporation counsel (Joseph P. Reilly, assistant corporation counsel), for respondents.

BENEDICT, J.   This is an application arising upon an order to show cause why a writ of peremptory mandamus, directed to the president of the borough of Brooklyn and to the commissioner of highways of the borough, should not be issued to compel the commissioner of highways to return forthwith certain property of the relator which was removed by the commissioner of highways on June 11, 1918, from West Thirty-seventh street, Coney Island, and to cancel a bill for the expense incurred in such removal and the storage charges thereon, and why the respondents should not be compelled to refrain from interfering with the relator in the driving of piles and the erection of a fence on the east and west boundary lines of his property "from high water mark southerly and to and into the Atlantic Ocean at or below water mark or to the exterior pier line of said property."

Supreme Court, July, 1918.          [Vol. 104.

In the opening statement of the relator's brief it is said that he '' is the absolute owner of a strip of land at Coney Island running south from Surf avenue to and into the ocean from high water mark to the extreme end of the pier line. The controversy is over the strip of said beach between high and low water mark. His title to all of this land has been definitely and finally adjudicated and is not now open to controversy or discussion. It is not subject to public easements and use and occupation by the public is a continuing trespass.''

Upon this contention the relator's case rests. He alleges in paragraph 9 of his moving affidavit that the respondent Hesterberg refused to issue to him a permit for the temporary use of the roadway in front of the premises at the foot of West Thirty-seventh street for the purpose of building '' a fence on the building line of West Thirty-seventh street, extending into the ocean, and also the placing of a steam boiler on the same,'' and that such refusal was accompanied by the notification '' that if any attempt were made to erect said fence upon the lines of your deponent's said land from high water mark to and into the ocean, thereby obstructing public transit over and across the same, said agents would be at once arrested by the police.'' In paragraph 10 of the same affidavit the relator states that the acts, threats, refusals and transactions of the respondents were wholly without jurisdiction and were illegal, unlawful and tortious. The respondent Hesterberg denies these allegations in the affidavit submitted by the corporation counsel in opposition to the motion.

I might, without further recital of the facts which are set forth in the affidavits, deny this application in the exercise of discretion because of the failure of the relator to make out a clear case showing a breach of duty on the part of the respondents, even if the rela-

tor's contention as to the paramount character of his title as above set forth were conceded for the purposes of the application.

The issuance of the writ rests in the sound judicial discretion of the court. See *Matter of Hart,* 159 N. Y. 284; *People ex rel. Durant L. I. Co.* v. *Jeroloman,* 139 id. 14; *People ex rel. Jacobus* v. *Van Wyck,* 157 id. 495; *People ex rel. Lehmaier* v. *Interurban R. R. Co.,* 177 id. 296, 302. "The writ is employed to promote principles of justice. * * * Hence the writ will not issue in support of unjust claims, although they may be technically regular." 25 Cyc. 155.

Not only is the alleged breach of duty not clearly shown, but I will go so far as to say that upon that branch of the case the action taken by the respondents was entirely within their legal rights and duties in the administration of their respective offices under the provisions of the charter and the code of ordinances of the city of New York; but I disavow any intention of placing the decision of this application upon judicial discretion, and wish to be understood as putting it solely and squarely upon the ground that the relator has not and cannot have nor acquire such title to the land between high and low water mark as authorizes him to build permanent barriers across the foreshore the effect of which would be to deprive the public of its right to pass and repass thereon. In making this disposition of the motion I am aware that my act may be construed as recalcitrant upon the ground that in this case I do not follow the decision of the Court of Appeals in the case of *People* v. *Steeplechase Park Co.,* 218 N. Y. 459, in which that learned tribunal by a vote of four to three judges modified the decision of the Appellate Division in this department (reported in 165 App. Div. 231) and held that the owner of the upland might acquire from the commissioners of the

land office, one of the administrative boards of the state government, for beneficial enjoyment, and not for the promotion of commerce, a grant to the foreshore in front of his property which would be superior to the rights of the people of the state and would enable him to exclude all persons from such foreshore.

For reasons stated by the Court of Appeals in deciding other cases, and especially *Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Barnes* v. *Midland R. Ter. Co.,* 193 id. 375; 219 id. 91, I must respectfully refuse to follow it in the modification or limitation of the general rule which it adopted in the *Steeplechase Park* case. Such limitation or modification has had the unfortunate result, along the shore of Coney Island, of paralyzing the enforcement of the general principle and rendering abortive any efforts to compel obedience to the rule which the court recognized and reaffirmed in the decision as to the public right of passage along the foreshore.

I deny that the legislature has the power, either by direct action or otherwise, to give or grant to any person rights which are the property of all the citizens of this commonwealth, and which the legislature holds in trust for the common use and does not hold in its own right or as proprietor. I deny any power in any board or commission to sell and grant to any person, natural or artificial, such rights and properties as are held in trust for the common benefit of all the citizens of the state, and I assert that such rights are inalienable. I deny the right of any person to build or maintain such erections, whether by virtue of a grant from state authorities or otherwise, as will prevent the reasonably free and unobstructed enjoyment by all the citizens of this state of a right of passage across lands over which the tides ebb and flow, and I assert now,

as I asserted before in the *Steeplechase Park Case,* 82 Misc. Rep. 247, that a grant of lands under water and between high and low water mark to an individual, which contains no habendum clause, or words to indicate any intention to surrender or extinguish the public right of passage, does not operate to deprive the public of such right and will be construed as subject thereto upon the principle that such grants are to be construed strictly against the grantee.

The grant in the case at bar contains nothing to show that it was made either " to promote the commerce of this state or proper for the purpose of beneficial enjoyment of the same by the adjacent owner," and there is nothing in the deed to show the term or duration of the grant or to indicate that it was the state's intention in making it that the public right of passage should be barred or abrogated.

Doubtless it will be urged that it would be an act of injustice to deprive the owner of land abutting on the foreshore, who has paid money to the state to acquire a beneficial grant of the land lying between high and low water, of the right to use such land for any lawful purpose to the exclusion of the public. In other words, that having paid the stipulated price for the title in fee simple to the land under water he has a vested right therein superior to all other individual rights. The doctrine of " vested rights " has many just applications in the law, but not infrequently is it made use of to protect or perpetuate vested wrongs. In the case of these grants of land lying between high and low water in this state the upland owners do not give to the state (even if the state could legally grant it) a value at all commensurate with the property granted. The consideration is usually so entirely inadequate to the benefit conferred as to make the transaction, if not fraudulent in fact, at least fraudulent in the eye of the

law.   Especially is this true in the case of bathing beaches in close proximity to great centers of popuation, where the purpose of the grant, as Judge Bartlett said in regard to the Huber grant in the *Steeplechase Park* case, '' appears to have been to promote not commerce, but recreation for private gain.''   Upon what moral or ethical consideration can the state justify a perpetual grant of land forming the foreshore at Coney Island for a mere trifling consideration of less than $100 an acre, when it knows, or ought to know, that such a grant, by means of excluding fences, can be made to return a thousand per centum upon its cost each year?   Such a situation is abhorrent to the sense of common justice; but I regret to say that, owing to the supineness of some public officials and to other causes which are perfectly well understood without explanation, the interests of the public are often lost sight of and vested wrongs in process of time ripen into so-called '' vested rights.''

For these reasons this motion will be denied, with costs.

Motion denied, with costs.