William J. Sullivan, J.
In this action the plaintiff seeks judgment: (1) On the first cause of action, to enjoin the defendant from preventing plaintiff from clearing and making passable for pedestrian use, a right of way which plaintiff claims *227 over property of1 the defendant to the high water mark of Hempstead Harbor, upon which defendant’s property fronts; and (2) on the second cause of action to enjoin the defendant from interfering with plaintiff’s rights under the doctrine of jus publicum to use the land between the high and low water marks of Hempstead Harbor in front of defendant’s property, and his “ right of access to the water for fishing, bathing and other lawful purposes
The defendant has interposed an answer in the form of a general denial, which also, however, asserts: (1) A first affirmative defense and counterclaim as to the first cause of action, alleging that plaintiff’s claimed easement for said right of way is null and void, in that it unlawfully enlarged and overburdened a prior easement for a right of way over defendant’s property created in 1950; (2) a second affirmative defense and counterclaim as to the second cause of action, alleging that plaintiff unlawfully seeks to enlarge his right of jus publicum on the foreshore in front of defendant’s property so as to lounge and hold beach parties thereon in violation of defendant’s rights, and seeking an injunction against same; and (3) a third counterclaim for damages for alleged wanton and unlawful destruction by the plaintiff of portions of defendant’s property. This third counterclaim, however, was withdrawn by the defendant at the conclusion of the trial.
This litigation stems from a declaration of easement (hereinafter referred to as the Diamond Declaration) dated February 19, 1968 and recorded March 14, 1968 in Liber 7802, page 80, made by Charles Diamond pertaining to several parcels of real property owned by him in the Incorporated Village of Sands Point, which included the respective parcels now owned by the plaintiff and the defendant.
Under paragraph 1 (a) of that instrument a right of way was “created and established for pedestrian use only ” over a “.strip of land five (5) feet in width” along and inside the westerly boundary line of what is now defendant’s property, running from Old House Lane to the northerly side of a preexisting right of way (record title to which is now in the defendant) along the northerly side of defendant’s property; and under paragraph 1 (b) “ Over a strip of land # * * for a width of ten (10) feet ” within said old pre-existing right of way to Hempstead Harbor, a distance of approximately 576 feet.
Paragraph 2 of the Diamond Declaration provides (italics added): “ 2. The right of way hereby created for pedestrian use only shall be for the benefit of the owners in fee of land shown *228 and designated on the Nassau County Land and Tax Map known as School District #4, Section 4, Block 1-13, Lots 11, 41, 48, 36 and 46, 49 as the same exists or as the same may hereafter be subdivided as so subdivided in favor of the then owners and the successors and assigns of the Declarant and the then owners, between their respective properties and Hempstead Harbor; the owner in fee of the premises over which said right of way' exists shall not he obligated at any time to maintain, repair or Jceep said right of way free or rid of any vegetation, trees hr otherwise/’
On March 15, 1968 (the day after the Diamond Declaration was recorded in the County Clerk’s office) Charles Diamond executed a deed conveying to Cynthia Salzhauer, the defendant herein, the property which she now owns. The deed described the property in two parcels, Parcel 1 of which consisted of Lot 41 and Lot 48 (two of the lots mentioned in the Diamond Declaration) ; and Parcel 2 of which was the 10-foot strip described in paragraph 1 (b) of the Diamond Declaration. These two parcels have since been renumbered on the County Land and Tax Map as Lots 53 and 54. This deed to the defendant contained a recital that it was made “ Subject to covenants, easements and reservations of record”.
On November 18, 1968, Charles Diamond conveyed" to the plaintiff herein the property which he now owns, located on the south side of Old House Lane. This parcel had formed part of Lot 46 mentioned in the Diamond Declaration; but thereafter, that lot was subdivided and plaintiff’s portion thereof was designated as Lot 62 on the County Land and Tax Map. This deed contains the following recital: ‘1 subject to and together with the right of way between the premises hereinabove described and Hempstead Harbor and recorded in the Nassau County Clerk’s Office in Liber 7802, Page 80 and Liber 7805, Page 131.”
The libers and pages mentioned in this clause refer to the original Diamond Declaration and an amendment thereto which merely corrected an error in the degree of one of the courses.
In support of her first separate affirmative defense and counterclaim challenging plaintiff’s first -cause -of action, defendant established that the 10-foot right -of way described in paragraph 1 (b) of the Diamond Declaration had previously been designated as part of an easement for a right of way under the last will and testament of Martha Mott Fraser, which concededly was admitted to probate in Nassau County in 1950. The testatrix was the -owner -of several parcels -of property which *229 included that now owned by the defendant, but which did not include the property now owned by the plaintiff. The right of way created under her will established a pedestrian easement over what is now part of defendant’s property, i.e. Lot 53, and which includes the 10-foot strip of land described in paragraph 1 (b) of the Diamond Declaration. The evidence indicates that said Lot 53 constitutes the entire width of the Fraser right of way along the northerly boundary line of defendant’s adjoining Lot 54. Defendant’s counsel contended on the trial that there “ is an overburdening and that there is an imposition on the original right of way by the creation ’ ’ of the Diamond easement. The fallacy in this contention, of course, is that the defendant has no standing to complain because property which was already subject to the Fraser easement is now also burdened by the additional easement created by Diamond. The defendant having taken title to her property subject to easements of record, she is chargeable with notice that the Diamond easement was an encumbrance along the northerly portion of her property, and she is bound thereby (Ammirati v. Wire Forms, 273 App. Div. 1010, affd. 298 N.Y. 697). Defendant has submitted no authority (and this court is not aware of any) to support her claim that Charles Diamond, as the common owner of property which included that now owned by both the plaintiff and the defendant, was without authority to create a new easement in favor of the plaintiff over defendant’s property because that property was already burdened with the Fraser easement. The court finds this claim to be without merit, and therefore the first separate affirmative defense and counterclaim are dismissed.
Upon the record herein, this court finds that under the terms of the Diamond Declaration, the plaintiff has a valid easement of a right of way for pedestrian use over the respective 5-foot and 10-foot strips of1 land on defendant’s property described in said declaration; and that the testimony of plaintiff and other property owners clearly establishes that said right of way for almost its entire length is not reasonably passable or even safe for use by pedestrians because of heavy undergrowth which in places is as much as two feet high; dense brambles; tree stumps; thorny bushes and shrubs several feet high; and dangerous holes, depressions and excavations in many places. When plaintiff indicated to the defendant and her husband that he and other property owners intended to clear the right of way to make it traversable by pedestrians, he was told by them that nothing could be cleared off without their specific approval and *230 that only “ hand tools ” could he used. After receiving this ultimatum, plaintiff commenced this action.
Inasmuch as the Diamond Declaration provided that the owner in fee of the servient tenement is not obligated to keep the right of way free of “ any vegetation, trees or otherwise ”, the plaintiff as owner of the dominant tenement is entitled to take all reasonable action to clear and maintain the right of way so as to make it passable for ordinary pedestrian travel; and the rights of the defendant as the fee owner of the servient tenement are subject to his right so to do (28 C.J.S., Easements, § 94; Herman v. Roberts, 119 N. Y. 37; McMillan v. Cronin, 75 N. Y. 474). As stated in the Herman case (supra, p. 43): “ It cannot be supposed that the grantor when conveying a right of way over an impassable tract of land intended to restrict his grantee from changing its surface so as to make it passable ”. The following excerpt from the opinion in the McMillan case (supra, p. 477) also is pertinent: “ The very existence of a right of way precludes the idea that the party who has the right cannot repair or keep the way in order. Suppose the way should be partially impaired by a storm, or in some other manner become obstructed and impassable. Can it be claimed that there is no power to repair it and put it in order? Clearly not; for the right to repair is incident to the easement, and without it the way might become useless and of no benefit. Having the easement, carries with it the right to make necessary repairs: (Washb. on Ease., 654; Prescott v. White, 21 Pick., 341, and cases cited.) In fact, the grantee of a private way is bound to keep it in repair: (Williams v. Safford, 7 Barb., 309.) ” The following statement in Corpus Juris Secundum (vol. 28, Easements, § 94, p. 775) is particularly applicable to the rights of the respective parties in the instant case: “ The owner of the dominant estate may do whatever is reasonably necessary to the enjoyment of the easement and to keep it in a proper state of repair, provided it is done without imposing unnecessary inconvenience on the owner of the fee * * * The right to repair includes a right of entry on the servient estate for the purpose of making repairs whenever such repairs are necessary, but at no other time and for no other purpose ”. Included in the right of the grantee of the easement to keep the way passable is, as stated in Corpus Juris Secundum (vol. 28, Easements, § 100, p. 784) the right to “ remove any natural obstructions existing in or along the way which interfere with its use for the purposes for which it was granted ”.
The land comprising this right of way rises and falls at various points; it includes some trees and numerous tree *231 stumps; and as it nears the foreshore, or beach, its surface consists of crabgrass and sand. The right of the plaintiff to clear the area to make it passable for ordinary pedestrian use is limited to performing only such work as is reasonably necessary for that purpose. The defendant as owner of the servient tenement has a corresponding right to have the natural condition of the terrain preserved as nearly as practicable, consistent with plaintiff’s right of clear passage. Accordingly, this court holds that the natural contour of the right of way, with the rise and fall of the ground level along its course, is not to be altered by any attempts to make the way level— since to do so would be at variance with the surrounding environment of the defendant’s adjacent property. The plaintiff will, however, be permitted to fill in and grade any unusual holes, depressions and excavations which might reasonably constitute a hazard or trap for the pedestrian; and plaintiff will also be permitted to remove the tree stumps as indicated on the plan which is in evidence. In doing this work of filling in ground, grading, removing dense growth, large shrubs and bushes, etc., the plaintiff will not be confined to the use of hand tools as defendant would dictate, but will be permitted the use of light power tools and small pieces of power equipment and machinery, as recommended by plaintiff’s engineer, the witness Noonan. Initially, plaintiff had proposed to pave the right of way, but abandoned this proposal on the trial. Even if he had not done so, the court would not have permitted any paving to be done. The court will, however, permit the plaintiff to surface the right of way to a width of four feet as recommended by the said witness Noonan with gravel, cinders, or equivalent covering, other than that part of the surface consisting of crabgrass and sand. The court is satisfied that such surfacing of the right of way will not damage existing trees, shrubs or bushes; will not be harmful to the environment; will serve better to define the boundaries of the pedestrian path; and will be conducive to proper maintenance as well as safe passage by the pedestrians who use it. Plaintiff’s plan does not contemplate the removal of any growing trees in order to make the way passable, and plaintiff, therefore, will not be permitted to remove any. Plaintiff is advised that he must keep in mind that his easement is one for pedestrian use only — that this means precisely that; and therefore the right of way may not be traversed by baby carriages, bicycles, or vehicles of any kind without the express consent of the defendant, her grantees or successors in title. Pursuant to the within findings, judgment *232 is granted in favor of plaintiff on the first cause of action, enjoining the defendant from interfering with plaintiff clearing and maintaining the right of way for pedestrian use in accordance with the foregoing.
On the second cause of action, to which defendant has interposed a second separate affirmative defense and counterclaim, the sole issue between the parties is the extent to which the plaintiff, under the doctrine of jus publicum, may use that area of beach referred to as the “foreshore” lying between the mean high water mark and the mean low water mark of Hemp-stead Harbor in front of defendant’s property. As appears from defendant’s Exhibit C, this area extends easterly from defendant’s property line fronting on Hempstead Harbor (which line is 102 feet east of monuments in the ground on both the southerly and northerly boundary lines of defendant’s property) a distance of approximately 63 feet on the southerly side and 68 feet on the northerly side, where the 10-foot right of way ends. Plaintiff asserts that the doctrine of jus publicum gives him the right to gain access to the water for fishing and bathing and also for “ other lawful purposes, to wit, lounging or reclining on the foreshore ” and to bring guests there for the same purpose. Counsel for defendant in his memorandum of law concedes that under the doctrine of jus publicum the right of the plaintiff “ across the foreshore is that of traverse for reasonable purposes”; but contends that this right does not authorize plaintiff to use the area for lounging or reclining, or for beach parties.
In Johnson v. May (189 App. Div. 196, 203), the Appellate Division, Second Department, indicated that the jus publicum might, under certain conditions, permit a person to place an umbrella and blanket on the beach and rest on the beach in conjunction with bathing in the adjacent waters. Subsequently, however, the Court of Appeals in Tiffany v. Town of Oyster Bay (234 N. Y. 15) discussed at length the respective rights in the foreshore of (a) the public, (b) the fee owner (which in that case was the Town of Oyster Bay), and (c) the owner of the adjacent upland. Specifically, with reference to the rights of the public, the court held (p. 20): “ The foreshore or land under the waters of the sea and its arms, between high and low-water mark, is subject, first, to the jus publicum— the right of navigation, and when the tide is out, the right of access to the water for fishing, bathing and other lawful purposes to which the right of passage over the beach may be a necessary incident. (Barnes v. Midland R. R. T. Co., 193 N. Y. *233 378, 384.) ” The right of the public in the foreshore is similarly defined in Warren’s Weed, New York Real Property, Volume 6, under the chapter on Water, at section 6.03 as follows : “ The right of the public in the foreshore * * * is to pass and repass when the tide is out ” (italics added). It is the opinion of this court that the Tiffany decision (243 N. Y. 15, supra) definitively established as the law of this State that the right of the public to use the foreshore when the tide is out, is limited to the right merely to pass over it as a means of access to the water; and therefore the intimation in the earlier Johnson v. May decision (189 App. Div. 196, supra), that the jus publicum may also include a right to lie on the beach has no validity. This doctrine that the use of the foreshore is limited only to the right to pass and repass between the upland and the water was specifically applied by the Appellate Division, Second Department, to facts strikingly similar to those involved herein in Des Fosses v. Rastelli (283 App. Div. 1069). In that case, the late Mr. Justice Stoddabt at Special Term, Suffolk County, in an opinion published in the New York Law Journal on December 16, 1953 (p. 1475, col. 1) had held, among other relief, that the plaintiff, who was the grantee of a right of way over the defendant’s land “ for use as an access and egress to Long Island Sound ’ ’, had the right to use the beach area between the upland seawall and the water “ for beach purposes, such as reclining by bathers ”, and the judgment entered on this decision included a provision containing this last-quoted language. On appeal, however, the Appellate Division, in modifying the judgment, struck therefrom the said above-quoted language. In its memorandum decision, referring to the language creating the right of way in that case, the Appellate Division stated (p. 1070): “ There is nothing in that language to suggest that the owners and their families and guests in the dominant tenement, the fifteen-acre tract, were to have any right other than that of getting to the Sound where they could exercise rights common to the public. ’ ’
This court considers that this determination by the Appellate Division in the Des Fosses case renders untenable the plaintiff’s construction of the jus publicum asserted in his second cause of action herein.
The parties herein agree that either the State of New York or the Town of North Hempstead is the fee owner of the foreshore in the instant case. That area has not been designated *234 by the fee owner as a public beach; and the aforesaid law defining the jus publicum certainly does not paake it such.
Accordingly, it is the decision of this court that the right of the plaintiff to use the foreshore in front of defendant’s property under the doctrine of jus publicum may not exceed the following: When the tide is in, to use the water covering the foreshore for boating, bathing, fishing or other lawful purposes; and when the tide is out, to pass and repass over the foreshore as a means of access to reach the water for the same purposes. Plaintiff’s second cause of action must be dismissed, since defendant does not challenge plaintiff’s right to the jus publicum. Defendant is entitled to affirmative judgment on her counterclaim, enjoining and prohibiting the plaintiff from reclining or inducing others to recline on the foreshore in front of her property; and from using or inducing others to use the same, when the tide is out, other than to pass over it as a means of access between the upland and the waters of Hempstead Harbor.