THE LEWIS BLUE POINT OYSTER CULTIVATION COMPANY, Appellant, *v.* J. MARVIN BRIGGS, Respondent.

Navigable waters — grants of lands under navigable waters — right of Federal government to improve navigation by dredging channel through land under water held by private owners.

The authority of the United States for the regulation of commerce between the states and to improve navigation in navigable waters is paramount to the private property rights and exclusive private fishery rights of the owners of lands under water, by virtue of colonial patents.

In patents from a sovereign to a subject, the rule of construction which controls deeds between individuals is reversed and the terms are taken most strongly against the grantee, because the public interest is involved. For the same reason, in grants of land under navigable waters there is impliedly reserved the right of navigation, and, as a necessary part of so important a subject, the right to improve navigation for. the benefit of commerce.

The lessee of land under the navigable waters of Great South Bay, an arm of the sea, whose lessors hold title thereto under colonial patents from the king of England, cannot maintain an action to restrain a contractor employed by the United States government from dredging a channel over the land in question for the purpose of increasing the depth of the water in aid of commerce and navigation, because the digging of such channel would destroy oyster beds planted by such lessee and materially reduce the value of the land for oyster cultivation. The lessee has no right in the land under water that is not subject to the power of the United States to construct the improvement in question without making compensation to it. When it planted its oysters it ran the risk that the crop might be interfered with whenever Congress decided to dig a channel, or otherwise improve navigation in the bay in question for the benefit of commerce.

*Lewis Blue Point Oyster Cultivation Co.* v. *Briggs,* 129 App. Div. 574, affirmed.

(Argued March 23, 1910; decided April 26, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 13, 1909, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was brought to restrain the defendant from digging or dredging upon certain land under the waters of Great South Bay, in the county of Suffolk, in such a way as to disturb the oysters planted by the plaintiff.

The defendant by his answer denied the jurisdiction of the court over the subject-matter of the action, upon the ground that the plaintiff seeks to restrain the improvement of navigation incident to the regulation of commerce over the navigable waters of Great South Bay, although such improvement has been duly authorized by Congress and the defendant has entered into contract with the United States government to make the same. The defendant also pleaded such contract in justification of his proposed action, and alleged that all the rights of the plaintiff are subject and subservient to the right of Congress to regulate commerce and navigation.

The court found in substance that certain persons, who, under three colonial patents made in 1666, 1686 and 1693, own the land in question, including the exclusive right of fishery thereon, leased the same to the plaintiff for the period of ten years from April 1st, 1901, for the purpose of planting, cultivating and growing oysters; that the plaintiff at great expense staked and buoyed the land and planted thereon a large quantity of oysters, which are his private property and worth more than five thousand dollars; that said lands are under the navigable waters of Great South Bay, an arm of the sea, over which registered and enrolled vessels pass for the purpose of commerce between the states; that the defendant is under contract with the Federal government, duly made pursuant to an act of Congress on the 21st of May, 1906, to dredge a channel two thousand feet long and two hundred feet wide, which will pass diagonally over the land in question, for the purpose of increasing the depth of the water in

aid of commerce and navigation; that the digging of such channel across said land would destroy the oysters of the plaintiff, not only along the line of excavation but for some distance upon either side thereof, and would materially reduce the value of the land for oyster cultivation; that the right to dig said channel has not been acquired by consent or condemnation, nor otherwise than through said contract made pursuant to the act of Congress aforesaid; that when the defendant began to dig said channel he was notified by the plaintiff to desist, but he refused unless enjoined by the court.

Among other conclusions of law the court found that the right of the United States and of the defendant as their agent to enter upon said lands and fishing rights without making compensation for the purpose of commerce and the improvement of navigation is paramount to the rights of the plaintiff or his lessors. The complaint was dismissed on the merits and the injunction theretofore granted *pendente lite* was vacated. From the judgment of the Appellate Division unanimously affirming the judgment of the Special Term this appeal was brought.

*A. A. Spear* for appellant. The submerged lands and fishery rights which were invaded by the defendant under his contract with the government, were "private property" within the fifth amendment to the Constitution. (*M. N. Co.* v. *United States,* 148 U. S. 312.) The king had power to make exclusive grants of the soil under navigable waters and of private fishing rights. (*Fund* v. *Kimshall,* 26 Wend. 413; *Rogers* v. *Jones,* 1 Wend. 237; *Gould* v. *Jones,* 6 Cow. 369; *Lansing* v. *Smith,* 4 Wend. 9; *People ex rel. Howell* v. *Jessup,* 160 N. Y. 257; *Sage* v. *Mayor, etc.,* 154 N. Y. 82.) When the sovereign power has granted property or a right, in clear and express terms, and the grant has been accepted, it cannot impair, invade or destroy it. The grant is a contract. (*C. B. Co.* v. *B. B. Co.,* 27 N. Y. 87; *Muhlker* v. *N. Y. & H. R. R. Co.,* 173 N. Y. 549; 197 U. S. 544; *Story Case,* 19 N. Y. 161; *Lahr Case,* 104 N. Y. 268; *Kane*

*v. N. Y. E. R. R. Co.*, 125 N. Y. 164; *Birrell Case*, 198 U. S. 390; *Kierns Case*, 198 U. S. 391; *N. O. W. W. Co. v. Rivers*, 115 U. S. 674; *N. O. L. Co. v. L. L. & H. Co.*, 115 U. S. 650; *L. G. Co. v. C. G. L. Co.*, 115 U. S. 683.) The United States could only get the right to enter upon and take the property and rights invaded by invoking the Condemnation Law of this state. (*Langdon v. Mayor, etc.*, 93 N. Y. 129.)

*Selah B. Strong, 3rd,* and *William J. Youngs* for respondent. The right of the plaintiff as the lessee of the owners of the fee of the lands under water in Great South Bay, covered by the complaint herein, is subject to the paramount right of the United States to the use thereof for the regulation of commerce and the improvement of navigation incident thereto. (*Trustees, etc., v. Smith*, 188 N. Y. 74; *Barnes v. M. R. R. Terminal*, 193 N. Y. 378; *Oldsner v. N. L. & P. Co.*, N. Y. L. J., Oct. 28, 1909; Gould on Waters [3d ed.], 43, 173; Angell on Tide Waters, 64; *Free Fishers v. Gann*, 20 C. B. [N. S.] 1; *U. S. v. Richardson*, 100 Fed. Rep. 714; *Scranton v. Wheeler*, 179 U. S. 141; *People v. Vanderbilt*, 26 N. Y. 287; *Mayor, etc., v. Brooke*, L. R. [7 Q. B.] 229; *Martin v. Waddell*, 16 Pet. 366; *Stockton v. B. & N. Y. R. R. Co.*, 32 Fed. Rep. 19; *Hawkins Point Lighthouse Case*, 39 Fed. Rep. 77.)

VANN, J. The learned counsel for the appellant, with the discrimination of a lawyer who understands his case, has made certain concessions which limit discussion to a single question. He admits that neither the plaintiff nor its lessors have any control of the right of navigation over the land in question because the patents from the crown, which are silent upon the subject, must be taken most strongly against the grantees. He further admits that their rights are subject to the public right of navigation, but he insists that such right is confined to navigation of the bay in its natural state without disturbing the surface of the land under water by arti-

ficial means. The only question he presents for decision, as stated in his own words, is as follows : " Is the authority of the United States for the regulation of commerce between the states and to improve navigation in navigable waters paramount to the private property rights and exclusive private fishery rights of the plaintiff and its lessors ? "

The king of England had title to the land under the navigable waters throughout his kingdom as his private property, which he could dispose of as he saw fit without restraint or hindrance from the law. This was known as the *jus privatum* held by him in his individual capacity. (*Commonwealth* v. *Alger*, 7 Cush. 53, 82, 90 ; Hale De Jure Maris, 11 ; Hargrave's Law Tracts, 84, 89.) The king also had title, as sovereign and in no sense as proprietor, to the navigable waters themselves within rivers and arms of the sea where the tide ebbed and flowed, but he held them in trust for his people and he could not dispose of them by grant or otherwise. They were incapable of private ownership, for they were the *jus publicum* held by the king in a representative capacity. (Id.; Brackton b, 2, ch. 5, § 7; Moore's History of the Foreshore, 446, 533, 782 ; Hale De Portibus Maris, 85.)

" The *jus privatum* of the owner or proprietor," said Lord Hale, " is charged with, and subject to that *jus publicum* which belongs to the King's subjects; as the soil of an highway is, which though in point of property it may be a private man's freehold, yet it is charged with a public interest of the people, which may not be prejudiced or damnified." (Hale's De Jure Maris, ch. 6.)

To the ancestors and grantors of the plaintiff's lessors, the king granted the *jus privatum* to the *locus in quo*, but the *jus publicum* under the right of conquest and the treaty of peace made after the Revolutionary war went to the original states and when the Constitution was adopted became subject to the rights surrendered thereby to the United States. (*Shively* v. *Bowlby*, 152 U. S. 1 ; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378.)

The plaintiff and its lessors have no more than the king had, as proprietor, and the question is what did he hold in his individual capacity? Assuming that he conveyed all that he could convey, what is the measure of the title conferred? Was his title to land under navigable waters, and is the title of his grantees so absolute as to prevent improvement by the general government for the benefit of navigation, as a matter of right and without making compensation, or was the *jus privatum*, which is conceded to be subject to the easement of navigation, also subject by necessary implication from the nature of that easement, to the right to promote navigation by increasing the depth of the water so that vessels of larger draft and greater tonnage can pass in safety? Is the grant of submerged soil, which is so directly connected with the public right of navigation as to be incapable of complete separation therefrom, subordinate thereto to. the extent necessary to promote and develop commerce?

In patents from sovereign to subject the rule of construction which controls deeds between individuals is reversed and the terms are taken most strongly against the grantee, because the public interest is involved. For the same reason it is held that from grants of water land there is impliedly reserved the right of navigation, and, as a necessary part of so important a subject, the right to improve navigation for the benefit of commerce.

Upon the doctrine of implied reservation in grants of the crown, which rests on broad principles of public policy, we think the public right should be held to embrace whatever is essential to the interests of commerce, and that the private right is subject thereto. As the king could not grant to a subject the public right of navigation, he could not grant to a subject a right so blended therewith as to be. in effect a part thereof, and, hence, the right to dredge land under water for the improvement of navigation was reserved from the general terms of the grant by necessary implication. The patents in question are silent upon the subject of navigation in any phase. The crown did not grant any right that might interfere with

navigation in its broad sense, because it could not, and the patents should be construed accordingly. The right to dig a channel is analogous to the right to build a lighthouse upon submerged land granted to private individuals, or to fasten buoys thereto, or to blast out rocks and remove natural obstructions therefrom. (*South Carolina* v. *Georgia*, 93 U. S. 4, 12 ; *Gibson* v. *United States*, 166 U. S. 269 ; *Eldridge* v. *Trezevant*, 160 U. S. 452.)

In *Sage* v. *Mayor, etc. of N. Y.* (154 N. Y. 61, 79), after reviewing many authorities, we held that "It is a logical deduction from the decisions in this state that, as against the general public, through their official representatives, riparian owners have no right to prevent important public improvements upon tidewater for the benefit of commerce. The principle upon which the rule rests, although sometimes foreshadowed, has not been clearly set forth. Although, as against individuals or the unorganized public, riparian owners have special rights to the tideway that are recognized and protected by law, as against the general public, as organized and represented by government, they have no rights that do not yield to commercial necessities, except the right of pre-emption, when conferred by statute, and the right to wharfage, when protected by a grant and covenant on the part of the state, as in the *Langdon* and *Williams* cases. I think that the rule rests upon the principle of implied reservation, and that in every grant of lands bounded by navigable waters where the tide ebbs and flows, made by the crown or the state as trustee for the public, there is reserved by implication the right to so improve the water front as to aid navigation for the benefit of the general public, without compensation to the riparian owner. The implication springs from the title to the tideway, the nature of the subject of the grant and its relation to navigable tidewater, which has been aptly called the highway of the world. The common law recognizes navigation as an interest of paramount importance to the public. Thus, when the king used to grant an exclusive right of fishing in navigable tidewater, as once he lawfully might, if, in the course of time, the

nets or weirs interfered with navigation, they became a nuisance and could be abated as such. The grant was silent upon the subject, yet the courts held that whatever impeded the superior right of navigation was impliedly excepted from the effect of the grant. So, as it seems to me, when any public authority conveys lands bounded by tidewater, it is impliedly subject to those paramount uses to which government, as trustee for the public, may be called upon to apply the water front for the promotion of commerce and the general welfare. \* \* \* We think \* \* \* that the conveyance of the uplands in question to a subject should, from public considerations of the highest importance, be held to have been made with the implied reservation of the right to freely improve the navigation of the great seaport, within the general limits of which said uplands were situated."

Much of this extract was quoted with approval by the Supreme Court of the United States in *Scranton* v. *Wheeler* (179 U. S. 161), and while neither case is strictly analogous in its facts to the case now before us, both rest upon a principle which controls the question under consideration. In *Scranton* v. *Wheeler* the title of the riparian owner extended to the middle line of St. Mary's river, which forms part of the boundary between the United States and Canada and is a highway for interstate and international commerce. The general government under the authority of Congress constructed a pier resting on the submerged land for the purpose of improving the navigation of the river, and it was held that the prohibition of the Constitution of the United States against taking private property for public use without just compensation had no application. The title of the plaintiff in that case, although it did not come from the crown, was of the same nature as the title in this case, for it came from sovereign authority.

In *South Carolina* v. *Georgia* (93 U. S. 4) it was held in substance that the right to regulate commerce includes the right to regulate navigation, and, hence, to regulate and improve navigable rivers and ports on such rivers, and an

appropriation for the improvement of a harbor or a navigable river " to be expended under the direction of the Secretary of War " confers upon that officer the discretion to determine the mode of improvement.

In *Gibson* v. *United States* (166 U. S. 269, 271) the court said : " All navigable waters are under the control of the United States for the purpose of regulating and improving navigation, and although the title to the shore and submerged soil is in the various States and individual owners under them, it is always subject to the servitude in respect of navigation created in favor of the Federal government by the Constitution." (See, also, *Martin* v. *Waddell,* 16 Pet. 367 ; *State of Pennsylvania* v. *Wheeling & B. Bridge Co.,* 18 How. [U. S.] 421 ; *Gilman* v. *Philadelphia,* 3 Wall. 713 ; *Commonwealth* v. *Alger,* 7 Cush. 53 ; *Lane* v. *Harbor Commissioners,* 70 Conn. 685 ; *Lane* v. *Smith,* 71 Conn. 65 ; *Stockton* v. *Balt. & N. Y. R. Co.,* 32 Fed. Rep. 9 ; *Chappell* v. *Waterworth,* 39 Fed. Rep. 77.) Not all of these cases proceed expressly upon the principle of implied reservation, but whenever a patent from the crown was involved that principle was involved, for the patent is a contract protected by the fifth amendment to the Federal Constitution. Some of the cases are placed upon the ground that the title to submerged land, from whatever source it came, was acquired subject to the rights which government, representing the public, has to improve navigation. (*Scranton* v. *Wheeler,* 179 U. S. 141, 163.) This recognizes the principle by stating the effect thereof.

The case of *Monongahela Navigation Company* v. *United States* (148 U. S. 312), which is relied upon by the appellant, is not analogous. The plaintiff in that case had a franchise granted by a statute of the state to erect a lock and dam in a navigable river. It also had the consent of Congress. It was held that after the lock and dam had been constructed and the plaintiff was receiving tolls for its use, the Federal government could not take the franchise or the tangible property without paying for it. Mr. Justice Brewer, speaking for all the judges who took part in the decision, said : " In this case

there was not only the full authority of the state of Pennsylvania, but also, so far as respects this particular lock and dam, they were constructed at the instance and implied invitation of Congress. The Act of March 3, 1881, making an appropriation for the improvement of the river, in terms provided that no such improvement should be made until the Navigation Company had in good faith started upon the building of this lock and dam. * * * This is something more than the mere recognition of an existing fact ; it is an invitation to the company to do the work ; and when in pursuance of that invitation, and under authority given by the state of Pennsylvania, the company has constructed the lock and dam, it does not lie in the power of the state or the United States to say that such lock and dam are an obstruction and wrongfully there, or that the right to compensation for the use of this improvement by the public does not belong to its owner, the Navigation Company." (p. 334.)

This court held the same way under somewhat similar circumstances in *Langdon* v. *Mayor, etc. of N. Y.* (93 N. Y. 129) and *Williams* v. *Mayor, etc., of N. Y.* (105 N. Y. 419), both of which are cited and distinguished in *Sage* v. *Mayor, etc., of N. Y. (supra).*

We think that the plaintiff has no right in the land under water that is not subject to the power of the United States to construct the improvement in question without making compensation to it. It ran the risk when it planted its oysters that the crop might be interfered with whenever Congress decided to dig a channel, or otherwise improve navigation in Great South Bay for the benefit of commerce. Its loss may be severe, but Congress is not apt to deal ungenerously with those who have good grounds for relief.

The judgment should be affirmed, with costs.

Cullen, Ch. J., Gray, Edward T. Bartlett, Haight, Werner and Hiscock, JJ., concur.

Judgment affirmed.