In the Matter of the Application of SETH LOW and Others, Constituting the Board of Rapid Transit Railroad Commissioners of the City of New York, etc., for the Appointment of Commissioners of Appraisal, etc., Relative to Acquiring a Perpetual Underground Right, Easement and Right of Way under Joralemon Street, etc., Fulton Street, etc., Flatbush Avenue, etc.

JOHN H. DELANEY, Transit Construction Commissioner of the City of New York, and THE CITY OF NEW YORK, Appellants; JOHN OFFERMAN and Others, Respondents.

Second Department, January 27, 1922.

**Municipal corporations — city of New York — construction of subway under street — vault constructed under sidewalk by owner of building with permission of city is easement — said easement is property for which city must pay — Rapid Transit Act construed — fact that city owns fee of street does not relieve it from paying for destruction of easements.**

In proceedings by the city of New York for the purpose of acquiring a perpetual underground easement in a street for rapid transit purposes the owner of a building abutting on the street who had constructed, with the permission of the city, a vault under the sidewalk in the street is entitled to compensation for the loss sustained in consequence of the removal of the vault by the city in the construction of the subway, though the permission to the owner to construct the vault was subject to revocation and was revoked, for the vault so constructed was an easement appertaining to the owner's property and is a species of property which the city is bound to pay for under the Rapid Transit Act when condemned for purposes of subway construction.

The fact that the fee of the street is vested in the city did not prevent the owner, under the permission granted to him to construct the vault, from acquiring rights therein for which the city is bound to pay, when, acting in a private and corporate capacity in the construction of the subway, it destroyed those rights.

APPEAL by John H. Delaney and another from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of Kings on the 12th day of August, 1920, confirming the eighth separate report of the commissioners of appraisal, which awarded $21,000 to respondents for damages alleged to have been sustained by reason of the destruction of vaults in the bed of

the street in front of premises 503–513 Fulton street, borough of Brooklyn.

*Charles J. Nehrbas* [*John P. O'Brien, Corporation Counsel,* and *Edward J. Kenney, Jr.,* with him on the brief], for the appellants.

*William H. Hamilton* [*Norman C. Conklin* with him on the brief], for the respondents.

RICH, J.:

The claimants, respondents, in the year 1890 were the owners in fee of lots known as Nos. 503 to 513, inclusive, Fulton street, in the borough of Brooklyn.

It seems that in the year 1890 the city of New York, in response to respondents' request, granted a permit for the construction of a vault under the sidewalk in front of their premises, and a vault, nineteen feet by ninety-nine feet, was thereafter constructed in which there were installed four large boilers, a coal bin and heating and power appliances. In June, 1905, the city caused the respondents to be served with a notice of the revocation of the permit, and thereafter, to make room for subway construction in Fulton street, tore out and removed the vault and took possession of the portion of the street which it had occupied.

Before this the city had instituted this proceeding for the purpose of acquiring a perpetual underground easement for rapid transit purposes in Joralemon street, Fulton street and Flatbush avenue, and after whatever rights the respondents may have had by virtue of the permit and the subsequent construction of the vault became vested in the city, the proceeding was amended so as to include the rights claimed to be the subject of this controversy. The commissioners of appraisal have found the respondents had obtained an easement in the street and have made an award to them of substantial damages. The question presented upon this appeal is whether claimants are entitled to compensation for the loss they have sustained in consequence of the removal of the vault.

It was held in *Lincoln S. D. Co.* v. *City of New York* (210 N. Y. 34), which was an action to recover damages for trespass alleged to have occurred because of the breaking down of a

vault constructed in front of plaintiff's premises in Forty-second street, Manhattan, and removing the contents thereof, that plaintiff's rights as owner of the adjoining land were merely those of an abutter, which include the easements of light, air and access and lateral support, except as to excavations for street purposes, and that as none of these easements had been invaded, plaintiff was not entitled to recover. The appellant contends that that case is decisive of the question and that the award cannot be sustained.

Respondents in the instant case were in possession of the vaults under a permit which reserved the right of revocation in the event of the failure on the part of the party to whom it was issued to comply with its conditions. The determination as to whether respondents obtained an easement or privilege for which they are entitled to compensation depends on the construction to be placed upon the Rapid Transit Act, which authorizes the condemnation of " any real estate and any rights, terms and interest therein, any and all rights, privileges, franchises and easements, whether of owners or abutters, or others * * *, which, in the opinion of the board [now commission], it shall be necessary to acquire or extinguish for the purpose of constructing and operating such road free of interference or right of interference." (Laws of 1891, chap. 4, § 39.)* The word *property*, as used in the act, is defined as including " any *such* real estate, and any rights, * * * privileges, franchises and easements, whether of owners, abutting owners, or others." (Id. § 39, as amd. *supra;* Id. § 39, subd. 2, as amd. by Laws of 1909, chap. 498; Laws of 1913, chap. 540, and Laws of 1915, chap. 544.) The act also provides that upon the filing of the commissioners' oath, title and possession was acquired to all such property, rights, terms, franchises, easements and privileges appurtenant to any lots or parcels. The act further provided that upon filing of the oath the city " shall be and become forthwith liable to the respective owners of the several parcels of property and the

---

* See Laws of 1891, chap. 4, § 39, added by Laws of 1894, chap. 752, as amd. by Laws of 1901, chap. 587, and Laws of 1904, chap. 564. Since amd. by Laws of 1906, chap. 472; Id. § 39, subd. 1, as amd. by Laws of 1909, chap. 498; Laws of 1912, chap. 226, and Laws of 1913, chap. 524.— [REP.

several rights, terms, franchises, easements and privileges appertaining thereto, and of the said rights, franchises, easements, and privileges acquired as aforesaid, for the true and respective values thereof." (Id. § 47, added by Laws of 1894, chap. 752, as amd. by Laws of 1895, chap. 519. Since amd. by Laws of 1909, chap. 498; repealed by Laws of 1915, chap. 604, adding to Laws of 1891, chap. 4, § 47. See, also, Laws of 1915, chap. 604, § 4.)

A vault constructed under the sidewalk with the permission of the city, by an abutting owner, is an easement appertaining to the abutting owner's property, and is in itself a species of property.

In the *Lincoln Safe Deposit Company Case* (*supra*) the court said: "Reliance is placed by the plaintiff on a statement made in *Parish* v. *Baird* (160 N. Y. 302) that the right to maintain vaults is an easement. Whether an easement or not, the right is in some respects similar to an easement and is a property right as against any third party who may violate it. That was all the case presented. It did not involve the duration of the privilege as against the public." And in *Matter of Rapid Transit R. R. Comrs.* (197 N. Y. 81, 104) the court quotes from *Donahue* v. *Keystone Gas Co.* (181 id. 313, 320) as follows: "The easement extends to all parts of the street which enlarge the use and increase the value of the adjacent lot. *It is not limited to light, air and access*, but includes all the advantages which spring from the situation of the abutter's land upon the open space of the street. These rights exist whether he owns the fee of the street or not. As they are dependent upon the street and cannot exist without it, they are a part of it and thus become 'an integral part of the estate' of the abutting owner, subject to interference by no one except the representatives of the public." In *Parish* v. *Baird* (160 N. Y. 302, 306), which was an action to recover damages for injury to flagstones covering a vault constructed under the sidewalk in the street on which plaintiff's property abutted, the Court of Appeals, in sustaining a recovery, said: "It is true that the walk was in the street and not upon the plaintiff's land, and it may be that he could not sell or remove it, but as between himself and the city he was primarily liable for its construction and maintenance. It was built at

his expense, in the discharge of a duty or obligation imposed upon him by law. It must be maintained at his expense, and hence the destruction of it or any injury to it by the wrongful or negligent act of another is the plaintiff's loss and, so far, an injury for which he may demand redress. Moreover, the vault over which the walk was laid and of which it was a part, was an easement appurtenant to the plaintiff's property, and in itself a species of property which the plaintiff may protect as fully as any other property. Hence the plaintiff may recover damages from any one negligently injuring the walk, rendering its repair or rebuilding necessary. (*Bidelman* v. *State,* 110 N. Y. 232; *Rogers* v. *Randall,* 29 Mich. 41; *Trustees, etc.,* v. *Foster,* 156 N. Y. 354.)" I am of the opinion that the respondents acquired an easement, right or privilege under the permit and the construction of the vault, for which the Legislature intended that the city as condemning plaintiff, should pay.

In *Oswego & Syracuse R. R. Co.* v. *State* (226 N. Y. 351), which arose under the Barge Canal Act, the railroad had erected a bridge upon State land over the Seneca river (which at the time the bridge was constructed was a navigable stream, and was subsequently made a part of the canal system of the State) under a permit from the Superintendent of Public Works, which among other things contained the following provision: " The Superintendent of Public Works reserves the right at any time to revoke and annul this permit and cause said Delaware, Lackawanna & Western Railroad Co. to remove said bridge at its own cost and expense from the limit of ten rods from said Oswego Canal, also the right on the part of the State of re-entry and pre-occupancy of such lands covered by this permit, as the free and perfect use of said canal at any future time may require, or as may be necessary for making any repairs, improvements or alterations in the same." A change in the bridge became necessary upon the construction of the Barge canal. The Superintendent of Public Works in 1908 notified the railroad that the bridge must be changed to accommodate the plans for the canal; that its rights were subject to the rights of the State in the improvement of navigation; and that it must make the changes at its own expense. The same contention was there advanced,

to wit, that the permit was a revocable license and properly terminated by notice. The court held that under the statute the new bridges were to be constructed at the expense of the State, citing *Lehigh Valley R. R. Co. v. Canal Board* (204 N. Y. 471). Referring to the permit the court said: " In the earlier case there was an implied reservation by the State of the right to destroy the bridge in the improvement of navigation (*Lewis Blue Point Oyster Cultivation Co. v. Briggs*, 198 N. Y. 287, 292). In this case the reservation was express. We think the difference is unsubstantial. The power of the State is not changed by the form of reservation. Even though no permit had been granted, the duty of the railroad would be the same. *The equity of its position is not destroyed by its promise to obey the law.*" The *Lehigh Valley Case (supra)* was an action brought to restrain the Canal Board from interfering with plaintiff's bridge across the Seneca river. The court there held that the State under the statute for itself had assumed the cost of constructing new bridges.

There was a clear legislative intent that the city should pay for property taken in connection with the subway construction. Some point is made of the fact that because the fee of the street is vested in the city, respondents could acquire no rights therein. The fee of the streets acquired by the city is held *in trust* for the public, and not as corporate or municipal property (*People ex rel. City of New York v. N. Y. R. Co.*, 217 N. Y. 310, 315), and the city in the construction of the subway was acting in a private and corporate capacity. But this is not of primary importance, since it cannot permanently appropriate private property either as a municipal government or a railroad corporation without paying for it (*Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 97), and we are of the opinion that the claimants' equities are included in the word *property* as used in the statute.

The award was not excessive, and it should be affirmed, with ten dollars costs and disbursements.

BLACKMAR, P. J., KELLY, JAYCOX and MANNING, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.