THOMAS J. SMITH, Respondent, *v.* CHARLES J. ODELL et al., as Trustees of the Freeholders and Commonalty of the Town of Brookhaven, Appellants, and HENRY KREAMER et al., as Executors of WILLIAM KREAMER, Deceased, et al., Respondents.

Navigable waters — Great South bay — lease by trustees of town of Brookhaven of lands under water of bay with exclusive right to hunt and shoot wild fowl in waters over such land — trustees, under colonial grant and deed from Indians ratified by State Constitution, have right and power to make such leases — the fact that the general public have the right to use the water of the bay for the purpose of a public highway confers no right to take game from lands under water covered by leases granted by trustees.

1. The rights of fishing, hunting and fowling in and upon certain waters of Great South bay, together with power to lease or sell the lands covered thereby, having been granted to the trustees of the freeholders and commonalty of the town of Brookhaven by colonial patents and also by a deed from the Indians, and such patents, and the rights conferred thereby, having been confirmed and ratified by the Colonial Laws and by the successive Constitutions of the state of New York, as well as upheld by the courts, such trustees have the exclusive right — subject, however, in the interest of commerce, to the right of the public to use the waters of the bay for the purpose of navigation — to lease a certain part of the land under the waters of the bay " for the purpose, nevertheless, and for no other purpose whatever, of the gunning privilege and the right of shooting wild fowl that habit that locality."

2. In an action brought by a taxpayer and inhabitant of the said town of Brookhaven against the trustees thereof, to cancel two ten-year leases of land lying under the waters of Great South bay for hunting and shooting wild fowl the Appellate Division has held that the trustees have the same property or interest in the land under water that a landowner has in the margin of a highway passing through his land; that no one has any property in wild game until he has actually taken possession of it; that mere ownership of the land where such game happens to be does not amount to a reduction to possession; that if one has a right to be upon the land, he has, incidentally, the right to take any wild game thereon, subject only

to the Conservation Laws of the state and nation; that it, therefore, follows, " by parity of reasoning, that any person in the exercise of the right of passage, that is, of navigation upon the bay, has incidentally the right to take wild fowl thereon without any license by or hinderance from those trustees." This is erroneous and cannot be sustained; the right to the privileges in controversy has been conferred upon the trustees by grants ratified by successive constitutions of the state; and, by the leases in question, the grant of the soil is coupled with an express and not merely an implied grant of the right to hunt and shoot wild fowl.

3. Although the public have the right of navigation over the waters of Great South bay this right is limited under the circumstances to the use of the waters for the purposes of a public highway. The easement of passage over navigable waters does not involve a surrender of other privileges which are capable of enjoyment without interference with the navigator.

*Smith* v. *Odell*, 194 App. Div. 763, reversed.

(Argued October 20, 1922; decided November 21, 1922.)

APPEAL from a judgment, entered June 28, 1921, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Ralph J. Hawkins* for appellants. The trustees of the freeholders and commonalty of the town of Brookhaven, as proprietors, hold the title in fee of the premises, together with the incorporeal hereditaments of rights of hunting and fishing. (*Johnson* v. *M'Intosh*, 8 Wheat. 543; *Martin* v. *Waddell*, 16 Pet. 367; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 57; *Town of Southampton* v. *Mecox Bay Oyster Co.*, 116 N. Y. 1; *People ex rel. Howell* v. *Jessup*, 160 N. Y. 249; *People ex rel. Squires* v. *Hand*, 158 App. Div. 510; *Fletcher* v. *Peck*, 6 Cranch, 87.) The trustees had the legal right to make the leases which right is vested in them by the Dongan charter. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Hand* v. *Newton*, 92 N. Y. 88; *Rogers* v. *Jones*, 1 Wend. 237; *Robins* v.

*Ackerly*, 91 N. Y. 98; *People* v. *Lowndes*, 130 N. Y. 455; *Town of N. Hempstead* v. *Thompson*, 8 N. Y. S. R. 901; *Lansing* v. *Smith*, 4 Wend. 9; *Gould* v. *James*, 6 Cow. 369; *People ex rel. Howell* v. *Jessup*, 160 N. Y. 249; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Comrs. of Canal Fund* v. *Kempshall*, 26 Wend. 403.)

*Joseph S. Auerbach* and *Martin A. Schenck* for parties interested, *amici curiæ.* The trustees of the freeholders and commonalty of the town of Brookhaven hold title to the premises under ancient patents which include the rights of hunting. (*Yale* v. *Dederer*, 68 N. Y. 329; *L. Realty Co.* v. *Johnson*, 66 L. R. A. 439; *Harrison* v. *Fite*, 148 Fed. Rep. 781; *Morgan* v. *King*, 35 N. Y. 454; *Comrs. of Canal Fund* v. *Kempshall*, 26 Wend. 404.) The decision below was erroneous in re-asserting a right called " natural " and in accord with " the true spirit of our institutions " to the destruction of a right conferred by the solemn terms of a crown grant. (*Lowndes* v. *Huntington*, 153 U. S. 1; *Rogers* v. *Jones*, 1 Wend. 237; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Hand* v. *Newton*, 92 N. Y. 88; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *People ex rel. Howell* v. *Jessup*, 160 N. Y. 249; *Sterling* v. *Jackson*, 69 Mich. 488; *Schulte* v. *Warren*, 218 Ill. 108; *State* v. *Shannon*, 36 Ohio St. 423; *Grace* v. *Town of North Hempstead*, 166 App. Div. 844; 220 N. Y. 628; *Rockefeller* v. *Lamora*, 85 App. Div. 254, 258.)

*Frank W. Shaw* for respondent. Neither the town nor the trustees had the right to lease the gunning privileges to an individual. (*Matter of L. S. Development Co.*, 212 N. Y. 1; *People ex rel. Howell* v. *Jessup*, 160 N. Y. 256; *Lewis B. P. Co.* v. *Briggs*, 198 N. Y. 291; *Hooker* v. *Cummings*, 20 Johns. 90; *People ex rel. Squires* v. *Hand*, 125 N. Y. Supp. 192; *Town of Brookhaven* v. *Smith*, 188 N. Y. 78; *Rossmiller* v. *State*, 114 Wis. 169; *Barnes* v. *Midland*, 193 N. Y. 384; *Aquino* v. *Riegelman*, 171 N. Y. Supp.

716.) Wild fowl are not under the control of the respondents' trustees. (*Atty.-Gen. ex rel. Becker* v. *Farm*, 178 N. W. Rep. 569.)

McLᴀᴜɢʜʟɪɴ, J. The action is brought by a taxpayer and inhabitant of the town of Brookhaven to cancel two ten-year leases of certain land lying under water in the Great South Bay, L. I. They were given for a specified consideration by the trustees of the freeholders of the town of Brookhaven to William Kreamer, represented in the action by the defendants, his executors and heirs at law.

The leases describe the land and state they were given " for the purpose, nevertheless, and for no other purpose whatever, of the gunning privilege and the right of shooting wild fowl that habit that locality."

The complaint alleges, the answer admits, and the trial court found, as did the Appellate Division, that the title to the land leased is in said trustees as proprietors and not as part of the lands necessary to carry on the functions of the town government. The title is lodged in such trustees as the successors of the patentees of two colonial patents known as the Nichols and Dongan patents, given respectively in 1666 and 1686, also by an Indian deed dated November 10, 1685. By the patents the patentees were given the exclusive right of " fishing, hawking, hunting and fowling " together with power to lease or sell the lands covered thereby.

The construction of such patents and the rights conferred by them have been finally and conclusively settled and determined by this court. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287.) The patents specifically vested the rights of fishing, hunting and fowling in the trustees and have been confirmed and ratified by the Colonial Laws, as well as by the Constitution of New York, adopted in 1777 (sec. 36); Constitution 1821 (Art. 7,

sec. 14); Constitution 1846 (Art. 1, sec. 18); Constitution 1894 (Art. 1, sec. 17). The trustees and their predecessors invested with the fee of the lands, including the easements of hunting and fishing, have for upwards of one hundred years leased fishing rights and hunting privileges in the Great South Bay, during which time, so far as I have been able to discover, their right and power to do so have not been seriously questioned. The right to make such leases was expressly given by the Dongan charter.

The title of the trustees and the rights conferred by the patents are subject, however, in the interest of commerce, to the right of the public to use the waters of the Bay for the purpose of navigation. (*Lewis Blue Point Oyster C. Co.* v. *Briggs, supra.*)

The Appellate Division, as appears from the opinion delivered, reached the conclusion that the trustees have the same property or interest in the land under water that a landowner has in the margin of a highway passing through his land; that no one has any property in wild game until he has actually taken possession of it; that mere ownership of the land where such game happens to be does not amount to a reduction to possession; that if one has a right to be upon the land, he has, incidentally, the right to take any wild game thereon, subject only to the Conservation Laws of the state and nation; that it, therefore, follows, " by parity of reasoning, that any person in the exercise of the right of passage, that is, of navigation upon the Bay, has incidentally the right to take wild fowl thereon without any license by or hinderance from those trustees."

We reach a different conclusion. There is no need to consider how far exclusive privileges of fishing and hunting in navigable waters may lawfully be granted at the present time. The privileges in controversy have been ratified, as we have seen, by successive Constitutions of the state. There is no need to consider whether such

privileges attach themselves to grants of the bed of the stream as implied incidents or appurtenances. That is a subject upon which judges have not been wholly in accord. (*Sterling* v. *Jackson,* 69 Mich. 488; *Schulte* v. *Warren,* 218 Ill. 108; *Adams* v. *Pease,* 2 Conn. 481.) Here, the grant of the soil is coupled with an express and not merely an implied grant of the right to fish and hunt. In such circumstances we are quite clear that there is no necessary conflict between the reservation to the public of the right of navigation and the recognition of the exclusive privilege expressly granted to the owner. The public right, whatever it might otherwise be, must be held limited in such a situation to the right to use the waters for the purposes of a public highway. (*Sterling* v. *Jackson, supra.*) There are decisions to the effect that an owner who grants an easement to cross his land for the purpose of a public highway does not surrender to the public his right to protect wild game on the land, and the public does not acquire any right to pursue and kill the same while temporarily passing to and fro across the highway. (*L. Realty Co.* v. *Johnson,* 92 Minn. 363.) In like manner, the easement of passage over navigable waters does not involve a surrender of other privileges which are capable of enjoyment without interference with the navigator.

It follows that the order of the Appellate Division should be reversed and the judgment of the Special Term reinstated, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.