# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEHIGH VALLEY
RAILWAY COMPANY and Another, Appellants, *v.* THE STATE TAX
COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, March 12, 1927.

Taxation — special franchise tax — evidence justified finding that Six
Mile and Cascadilla creeks, at point where relator has bridges, are
navigable streams — capacity for use and not actual use controls —
crossing was special franchise — ownership of beds of streams by relator
was subject to navigation — contention by relator that streams were
not navigable before dredging and that dredging occurred after erection
of bridges, is not sustained.

The relator was properly assessed for special franchises over Six Mile and Cas-
cadilla creeks, over which it maintained bridges, for the evidence justified the
finding that said creeks are navigable streams and public waters, and that they
have been used for commerce in its ordinary sense and are capable of such use.
The capacity for use, and not the extent of the use, is the determining factor.
Accordingly, there existed an easement or right in the public to use the streams
as a highway and the crossings by the relator constitute special franchises.

The fact that the relator owned the beds of the streams did not prevent the
crossing of the streams from being special franchises, for its ownership of the
beds was subject to the right of navigation and did not give the relator the
right to bridge the streams.

The evidence does not sustain the relator's contention that the streams were
non-navigable before dredging, and that the bridges were erected before the
dredging was done. Furthermore, it appears that the dredging was done by
the city of Ithaca for the purpose of making the streams more usable as
navigable streams.

SEPARATE appeals by the relators, Lehigh Valley Railway Com-
pany and another, from five separate final orders of the Supreme
Court in certiorari proceedings, made at the Albany Special Term

and entered in the office of the clerk of the county of Albany on the 17th day of July, 1924, each adjudging that the crossings, bridges and tracks of the relator over two streams are special franchises.

The assessments involved are for the years 1919 to 1923, inclusive.

*Cobb & Cobb* [*Harold E. Simpson* of counsel], for the appellants.

*Albert Ottinger, Attorney-General* [*Frederic J. Merriman* and *Joseph B. Mulholland, Deputies Attorney-General,* of counsel], for the respondent.

VAN KIRK, Acting P. J. The referee has made findings as to the size and depth of each stream, both above the bridges and below to the navigable waters of Cayuga lake, and as to the boats and rafts which have been used and floated thereon. Exception is taken to but one finding of fact, made as follows: " That the said Six Mile Creek and said Cascadilla Creek are navigable streams and public waters. That motor boats, row boats, rafts and skiffs have and do navigate upon both of these creeks from the Cayuga Inlet to points up stream beyond the relator's bridge crossings." (Eighth finding.) We think the evidence justified this finding. (*Economy Light Co.* v. *United States,* 256 U. S. 113, 121; *Morgan* v. *King,* 35 N. Y. 454.) Each of these streams discharges into Cayuga inlet, which in turn discharges into Cayuga lake. It is not questioned that the inlet and the lake are navigable waters and are constantly used therefor.

The relator claims that these streams have not been used for commerce in its ordinary sense. We think the evidence shows that they have been. At the same time it is not the kind or extent of use, but the capacity for use, which is the determining factor; and this capacity the court has found. Having such capacity there existed an easement or right in the public to use the stream as a highway. Being a public highway a franchise to cross was necessary. (Tax Law, § 2, subd. 6, as renum. from subd. 3 and amd. by Laws of 1916, chap. 323.) The relator claims it had the right to cross because it owned the bed of each stream at the crossing. (See *People ex rel. Long Island R. R. Co.* v. *Tax Comrs.,* 148 App. Div. 751; affd., 207 N. Y. 683.) But the ownership of the bed of a public stream is not the ownership of the stream; it is a distinct property right (*Lewis Blue Point O. C. Co.* v. *Briggs,* 198 N. Y. 287, 292) and is held subject to the easement in the public as is the ownership of the soil under a land highway. (Farnham Waters & Water Rights, 117, 130.) The relator's right to cross these streams did not rest in the ownership of the beds; it was conferred by the relator's charter of incorporation; and " this right

to cross the public waters was a franchise." (*People ex rel. N. Y. C. R. R. Co.* v. *Tax Comm.,* 239 N. Y. 183, 186.)

The relator further claims that these streams were dredged; that before such dredging neither was a navigable stream; and that relator's bridges over these streams were constructed before such dredging. (*People ex rel. Long Island R. R. Co.* v. *Tax Comrs., supra.*) There are several answers to this contention: *First,* the relator has failed to establish that the bridges were built before the dredging was done. The little evidence in the case on this subject indicates the contrary. The burden was on the relator to establish this fact; the presumption is that the assessment is valid. *Second,* the court has found, and there is evidence to support it, that each of these streams had sufficient capacity for commerce and travel thereon prior to the dredging. *Third,* the dredging was done by the city of Ithaca. These are not private streams which were improved by the owners thereof to render them navigable, but were streams improved as a public charge and by authority of the municipality; and each stream is an arm of navigable water. (Farnham Waters & Water Rights, § 77, p. 366, and note 5, citing Hale De Jure Maris, chap. 3.)

The orders should be affirmed, with costs.

HINMAN, MCCANN, DAVIS and WHITMYER, JJ., concur.

Orders affirmed, with costs.